**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA

v.

GORDON J. COBURN and
STEVEN SCHWARTZ

**Hon. Kevin McNulty**
Criminal No. 19-120 (KM)

**Motion Return Date:**
**January 21, 2020**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT STEVEN SCHWARTZ'S**
**MOTION TO DISMISS COUNTS THREE AND FOUR**
**OF THE INDICTMENT AND FOR A BILL OF PARTICULARS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 4

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ...................................................................................................... 10

   I.    THIS COURT SHOULD DISMISS COUNTS THREE AND
       FOUR OF THE INDICTMENT ...................................................... 10

       A.   This Court Should Dismiss Counts Three and Four
           Because They Fail to Allege the Use of Interstate
           Commerce Element of the FCPA as to Mr. Schwartz .............. 10

       B.   This Court Should Dismiss Counts Three and Four
           Because It Is Unclear Whether Mr. Schwartz Is Charged
           with These Counts ................................................................... 15

       C.   If Counts Three and Four Are Not Dismissed, the
           Government Should Be Required to Disclose the Portions
           of the Grand Jury Transcript in Which the Prosecutors
           Advised the Grand Jury Regarding These Counts .................... 18

   II.   THIS COURT SHOULD GRANT A BILL OF
       PARTICULARS ............................................................................ 21

       A.   The Government Should Be Required to Identify the
           Co-Conspirators with Whom Mr. Schwartz Allegedly
           Conspired or Acted ................................................................. 22

       B.   The Government Should Be Required to Identify Other
           Key Unnamed Individuals and Entities .................................. 24

       C.   The Government Should Be Required to Identify the
           Places Where Mr. Schwartz Allegedly Acted and
           Conspired ............................................................................... 26

## TABLE OF CONTENTS
### (Continued)

**Page**

D. The Government Should Be Required to Identify and Provide Details Regarding the Payments Made in Furtherance of the Alleged Bribery Scheme............................27

E. The Government Should Be Required to Specify Whether Mr. Schwartz Is Alleged to Have Committed the Charged Offenses Directly, Aided or Abetted the Commission of the Offenses, or Both.......................................30

F. The Government Should Be Required to Identify How the Books, Records, and Accounts That Mr. Schwartz Allegedly Falsified or Caused to Be Falsified Were False and His Alleged Role ...............................................................33

G. The Government Should Be Required to Identify How the Internal Accounting Controls Allegedly Were Violated and Mr. Schwartz's Alleged Role in Doing So .........35

H. The Government Should Be Required to Particularize the Purpose for Which Mr. Schwartz Allegedly Conspired to Violate and Violated the FCPA and, if Counts Three and Four Are Not Dismissed, His Alleged Use of Interstate Commerce with Respect to Those Counts...............................37

I. The Government Should Be Required to Identify the Alleged Benefits That Mr. Schwartz and His Alleged Co-Conspirators Received ......................................................40

III. MR. SCHWARTZ JOINS IN MR. COBURN'S MOTIONS............41

CONCLUSION..............................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chevron Corp.* v. *Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir.
  2016) .......................................................................................................13, 37

*Douglas Oil Co.* v. *Petrols Stops Nw.*,
  441 U.S. 211 (1979)................................................................................19, 20

*Failla* v. *City of Passaic*,
  146 F.3d 149 (3d Cir. 1998) .........................................................................32

*Goodall-Gaillard* v. *N.J. Dep't of Corr.*,
  No. 09-cv-954 (KM), 2014 WL 2872086 (D.N.J. June 24, 2014) ....................41

*Joseph* v. *N.J. Transit Rail Operations, Inc.*,
  No. 12-cv-1600 (JLL), 2013 WL 5676690 (D.N.J. Oct. 17, 2013),
  *aff'd*, 586 F. App'x 890 (3d Cir. 2014)...........................................................32

*Pereira* v. *United States*,
  347 U.S. 1 (1954)..........................................................................................13

*Roman* v. *Waste Mgmt. of N.J.*,
  No. 10-cv-4337 (JAP), 2011 WL 1807642 (D.N.J. May 12, 2011)...................32

*Russell* v. *United States*,
  369 U.S. 749 (1962).........................................................................11, 19, 21

*Sec. & Exch. Comm'n* v. *Straub*,
  No. 11-cv-9645 (RJS), 2016 WL 5793398 (S.D.N.Y. Sept. 30,
  2016) .......................................................................................................13, 14

*United States* v. *Addonizio*,
  451 F.2d 49 (3d Cir. 1971) .............................................................................9

*United States* v. *Agnello*,
  367 F. Supp. 444 (E.D.N.Y. 1973) ...............................................................9, 31

*United States* v. *Bergrin*,
  650 F.3d 257 (3d Cir. 2011) ......................................................................11, 15

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States* v. *Bortnick*,
   No. 03-cr-414 (LDD), 2004 WL 2752471 (E.D. Pa. Nov. 29, 2004) ...............12

*United States* v. *Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) .................................................................................8

*United States* v. *Curtis*,
   506 F.2d 985 (10th Cir. 1974) ..........................................................................15

*United States* v. *Dean*,
   266 F. Supp. 159 (S.D.N.Y. 1966) .....................................................................39

*United States* v. *Deerfield Speciality Papers, Inc.*,
   501 F. Supp. 796 (E.D. Pa. 1980).......................................................................21

*United States* v. *DePaoli*,
   41 F. App'x 543 (3d Cir. 2002) ............................................................................7

*United States* v. *Falkowitz*,
   214 F. Supp. 2d 365 (S.D.N.Y. 2002) ..................................................................9

*United States* v. *Feola*,
   651 F. Supp. 1068 (S.D.N.Y. 1987) ...................................................................31

*United States* v. *Ganim*,
   225 F. Supp. 2d 145 (D. Conn. 2002)..................................................................40

*United States* v. *Gatto*,
   746 F. Supp. 432 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d
   491 (3d Cir. 1991)..........................................................................................22, 26

*United States* v. *Green*,
   No. 92-cr-159 (JTC), 1993 WL 652793 (W.D.N.Y. Sept. 21, 1993)................31

*United States* v. *Hedaithy*,
   392 F.3d 580 (3d Cir. 2004) ..............................................................................11

*United States* v. *Holman*,
   490 F. Supp. 755 (E.D. Pa. 1980).......................................................................26

iv

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States* v. *Hoskins*,
  902 F.3d 69 (2d Cir. 2018) ...................................................................................31

*United States* v. *Hsia*,
  24 F. Supp. 2d 14 (D.D.C. 1998)........................................................................33

*United States* v. *Kahale*,
  789 F. Supp. 2d 359 (E.D.N.Y. 2009) ..................................................................9

*United States* v. *Lockheed Corp.*,
  No. 194-cr-226 (MHS), 1995 WL 17064259 (N.D. Ga. Jan. 9,
  1995) ....................................................................................................................13

*United States* v. *Mahaffy*,
  446 F. Supp. 2d 115 (E.D.N.Y. 2006) ..................................................................9

*United States* v. *Mariani*,
  90 F. Supp. 2d 574 (M.D. Pa. 2000)....................................................................23

*United States* v. *McDowell*,
  888 F.2d 285 (3d Cir. 1989) ................................................................................19

*United States* v. *McGuinness*,
  764 F. Supp. 888 (S.D.N.Y. 1991) ......................................................................29

*United States* v. *Mosberg*,
  866 F. Supp. 2d 275 (D.N.J. 2011)......................................................................12

*United States* v. *Moyer*,
  674 F.3d 192 (3d Cir. 2012) ..........................................................................passim

*United States* v. *Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000) ..............................................................23, 33

*United States* v. *Panarella*,
  277 F.3d 678 (3d Cir. 2002), *abrogated on other grounds by*
  *Skilling* v. *United States*, 561 U.S. 358 (2010)....................................................11

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States* v. *Pressley*,
  865 F. Supp. 2d 606 (D.N.J. 2012)..................................................................39

*United States* v. *Ramirez*,
  602 F. Supp. 783 (S.D.N.Y. 1985) ...................................................................23

*United States* v. *Redding*,
  540 F. Supp. 2d 1184 (D. Kan. 2008)..............................................................23

*United States* v. *Reifler*,
  446 F.3d 65 (2d Cir. 2006) ...............................................................................13

*United States* v. *Rogers*,
  617 F. Supp. 1024 (D. Colo. 1985)...................................................................33

*United States* v. *Roque*,
  No. 12-cr-540 (KM), 2013 WL 2474686 (D.N.J. June 6, 2013).........................7

*United States* v. *Schiff*,
  538 F. Supp. 2d 818 (D.N.J. 2008), *aff'd*, 602 F.3d 152 (3d Cir.
  2010) .................................................................................................................33

*United States* v. *Stocker*,
  No. 89-cr-463 (RSG), 1990 WL 157153 (E.D. Pa. Oct. 10, 1990).....................8

*United States* v. *Thompson*,
  No. 17-cr-094 (CCC), 2019 WL 102413 (D.N.J. Jan. 4, 2019) .........................19

*United States* v. *Trie*,
  21 F. Supp. 2d 7 (D.D.C. 1998)............................................................23, 34, 40

*United States* v. *Tull*,
  No. 15-cr-622 (SDW), 2018 WL 1128771 (D.N.J. Mar. 1, 2018)......................7

*United States* v. *Urban*,
  404 F.3d 754 (3d Cir. 2005) ...........................................................................15

*United States* v. *Vasquez-Ruiz*,
  136 F. Supp. 2d 941 (N.D. Ill. 2001).................................................................29

vi

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States* v. *Vastola*,
 670 F. Supp. 1244 (D.N.J. 1987) ................................................................23, 26

*United States* v. *Vitillo*,
 490 F.3d 314 (3d Cir. 2007) ............................................................................38

*United States* v. *White*,
 104 F. Supp. 120 (D.N.J. 1952) .......................................................................19

*United States* v. *Wilson*,
 No. 95-cr-668 (LMM), 1997 WL 10035 (S.D.N.Y. Jan. 10, 1997) .............23, 28

*United States* v. *Wolfson*,
 405 F.2d 779 (2d Cir. 1968) .......................................................................13, 14

*United States* v. *Wright*,
 776 F.3d 134 (3d Cir. 2015) ..............................................................................7

*United States* v. *Zauber*,
 857 F.2d 137 (3d Cir. 1988) ............................................................................11

**STATUTES**

15 U.S.C. § 78dd-1(a) ............................................................................11, 12, 13, 37

18 U.S.C. § 2 ....................................................................................................3, 30, 31

**OTHER AUTHORITIES**

Fed. R. Crim. P. 6(e)(3)(E)(ii) ..............................................................................20

Fed. R. Crim. P. 7(c)(1) .........................................................................................15

Fed. R. Crim. P. 7(f) ................................................................................................7

Fed. R. Crim. P. 12(b)(3)(B) ...............................................................................7, 11

vii

Defendant Steven Schwartz respectfully submits this memorandum of law in support of his motion to dismiss Counts Three and Four of the indictment filed against him on February 14, 2019 (the "Indictment"), and for a bill of particulars.

## PRELIMINARY STATEMENT

The government alleges that Mr. Schwartz, the former Executive Vice President and Chief Legal and Corporate Affairs Officer of Cognizant Technology Solutions Corporation ("Cognizant"), engaged in a scheme to bribe government officials in India to secure a construction planning permit (the "Planning Permit") and to conceal the bribe payment. Mr. Schwartz's alleged involvement in this conspiracy consists entirely of his participation in two short video conference calls, and is supported primarily by the testimony of a single witness. Mr. Schwartz has pleaded not guilty and intends to contest the government's case at trial.

Notwithstanding the limited allegations, and although one would not know it from a simple reading of the document, we have been informed that the Indictment purports to name Mr. Schwartz in seven counts. Two of those counts, Counts Three and Four, should be dismissed as a matter of law. *First*, these counts fail to allege an essential element of the charged offense, namely Mr. Schwartz's use of a means or instrumentality of interstate commerce. *Second*, the language of the Indictment makes it entirely unclear as to whether the grand jury actually intended

1

to charge Mr. Schwartz with these counts. (A plain reading suggests they did not.) For these reasons, if Counts Three or Four are not dismissed, the Court should order the government to disclose the portions of the grand jury transcript in which the prosecutors advised the grand jury regarding these counts, in order to determine whether the grand jury in fact indicted Mr. Schwartz on these counts.

In addition, and in any event, the Court should grant a bill of particulars because the Indictment fails to provide Mr. Schwartz with adequate notice of the allegations against him, severely hampering his ability to prepare for trial. Given the obvious deficiencies in the Indictment, Mr. Schwartz sought to resolve these issues by making narrowly tailored requests for particulars that do not appear in the Indictment but are necessary for meaningful preparation for trial and to avoid unfair surprise. Aside from identifying (without explanation) the counts in which Mr. Schwartz is charged, the government refused to respond.

The Court accordingly should grant a bill of particulars with respect to the following essential information:

*First*, to the extent the government alleges that Mr. Schwartz participated in a two-year conspiracy, the government should be required to identify the co-conspirators and other participants with whom Mr. Schwartz allegedly acted, as well as the locations of the alleged acts. The government has articulated no

2

justification for refusing to provide this information—the request for which is well-supported by the case law.

*Second*, the government should be required to identify and provide details regarding the payments allegedly made in furtherance of the bribery scheme. The government alleges that Mr. Schwartz conspired to conceal a bribe payment by agreeing that a third-party construction company, Larsen & Toubro ("L&T")[1] would make the payment to an Indian government official, after which Cognizant would reimburse L&T via false change orders when the project was complete. Because the government has produced a large number of emails, charts, spreadsheets, and invoices relating to various payments between Cognizant and L&T, Mr. Schwartz should not be asked to guess as to the particular payments and change orders that the government alleges are part of the fraud.

*Third*, the government should be required to indicate whether Mr. Schwartz is charged as a principal, an aider or abettor, or both with respect to the violations of 18 U.S.C. § 2 charged in Counts Two, Three, Four, Seven, Nine, and Twelve.

---

[1]   We understand the term "Construction Company" in the Indictment to refer to L&T.  Given that this is a public filing, we do not herein provide what we understand to be the identities of the co-conspirators alleged in the Indictment.

*Fourth*, the government should be required to clarify the bases of the charges against Mr. Schwartz that allege that he falsified Cognizant's books and records and that he circumvented and failed to implement Cognizant's internal accounting controls.  Specifically, and as to these counts, the government should provide particulars as to the specific books and records it alleges are false, and the specific internal controls that allegedly were violated.  In addition, the government should be required to particularize the purpose for which Mr. Schwartz allegedly conspired to commit and committed violations of the Foreign Corrupt Practices Act ("FCPA")—which is an element of the crime—and to identify the alleged benefits that he and his alleged co-conspirators received.

## STATEMENT OF FACTS

On February 14, 2019, a grand jury returned the Indictment, alleging that, between January 2014 and January 2016, Mr. Schwartz and co-defendant Gordon Coburn, Cognizant's former president, participated in a scheme to pay a bribe to an Indian official in exchange for the issuance of a Planning Permit required for Cognizant to build a facility in India, and then to conceal that bribery payment in Cognizant's books.

The allegations as they relate to Mr. Schwartz are limited: The Indictment alleges that on April 21 and 22, 2014, Mr. Schwartz participated in two video conference calls with Mr. Coburn and two alleged co-conspirators, identified

4

as "CC#1" and "CC#2." *See* Indict. Count 1 ¶ 12. The Indictment alleges that in the course of these calls, Mr. Coburn and Mr. Schwartz authorized an illegal payment of approximately $2 million to one or more government officials in India, and that in order to conceal Cognizant's involvement in the scheme, Mr. Coburn, Mr. Schwartz, CC#1, and CC#2 agreed that L&T would make the illegal bribe payment and that Cognizant would reimburse L&T by paying false change orders when the project was complete. *See id.* ¶¶ 11–13.

According to the Indictment, the co-conspirators later caused Cognizant to pay approximately $2.5 million to L&T as reimbursement for the bribe payment and "related expenses." *See id.* ¶¶ 4, 25–26. The Indictment alleges that the reimbursement payments were hidden within a series of line items in an L&T change order, thereby concealing the true nature and purpose of the reimbursement. *See id.* ¶¶ 4, 23–24. The Indictment does not allege whether the bribe was ever actually paid to a government official, and Mr. Schwartz is not alleged to have had any role in the reimbursement process.

The Indictment further alleges that the goal of the conspiracy was to illegally benefit Mr. Coburn, Mr. Schwartz, and Cognizant, and that securing the Planning Permit enabled Cognizant to avoid millions of dollars in costs. *See id.* ¶¶ 4, 21, 28.

Despite the two-year duration of the alleged conspiracy, the Indictment contains very few allegations regarding Mr. Schwartz's role in the scheme. Indeed, the Indictment alleges only that he participated in two video conference calls in April 2014 and that he later—through largely unspecified actions—falsified Cognizant's books and records, and circumvented and failed to implement internal accounting controls. *See id.* ¶¶ 12–13; *id.* Counts 7 & 9 ¶ 2; *id.* Count 12 ¶ 2. The Indictment does not indicate how the conspiracy is alleged to have benefited Mr. Schwartz personally.

On October 30, 2019, in an effort to better understand the government's allegations and to narrow the issues submitted to the Court, we requested that the government confirm or clarify certain aspects of the Indictment (the "Request"). *See* Ex. A.[2] Mr. Schwartz's requests were narrowly tailored based on the discovery produced (and not produced) by the government, in some cases seeking confirmation of the identities of individuals and entities we believe we have gleaned from the government's discovery. *See id.*

In its response, the government confirmed (without explanation) the counts with which Mr. Schwartz and Mr. Coburn are purportedly charged, but

---

[2]   References to "Ex. __" refer to the exhibits attached to the Declaration of Meredith A. Arfa, dated November 15, 2019.

otherwise declined to respond to our requests, stating that it would not provide the requested particulars absent an order of the Court (the "Response").  *See* Ex. B.

## LEGAL STANDARD

The Fifth and Sixth Amendments to the United States Constitution guarantee the accused the right to notice of the facts for which he must answer.  U.S. Const. amend. V ("No person shall be held to answer for a[n] . . . otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . nor be deprived of life, liberty, or property, without due process of law."), VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation.").

A court may dismiss an indictment in whole or in part if it lacks specificity.  *See* Fed. R. Crim. P. 12(b)(3)(B)(iii); *see also United States* v. *Wright*, 776 F.3d 134, 142 (3d Cir. 2015) (considering whether to dismiss "indictment as a whole, or, at a minimum, dismissal of any single count"); *United States* v. *Tull*, No. 15-cr-622 (SDW), 2018 WL 1128771, at *1 (D.N.J. Mar. 1, 2018).

In addition, where an indictment fails to set forth adequately the nature of the charges, a court may require a bill of particulars.  *See* Fed. R. Crim. P. 7(f); *United States* v. *Roque*, No. 12-cr-540 (KM), 2013 WL 2474686, at *6 (D.N.J. June 6, 2013) (McNulty, J.); *see also United States* v. *DePaoli*, 41 F. App'x 543, 546 (3d Cir. 2002) ("[A] court should grant a motion seeking a bill of particulars

7

when an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." (quotations and citation omitted)).  A bill of particulars serves "to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *United States* v. *Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (quotations and citation omitted).

A bill of particulars may be warranted where the facts lacking in the indictment cannot easily be deduced from the discovery. *See United States* v. *Stocker*, No. 89-cr-463 (RSG), 1990 WL 157153, at *1 (E.D. Pa. Oct. 10, 1990) ("[D]isclosure by the government of 'mountains of documents' is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the government would prove at trial." (citation omitted)).  Indeed, a bill of particulars is especially necessary where, as here, the government produces voluminous discovery (almost 200,000 documents) without particularizing the allegations against the defendant. *See, e.g.*, *United States* v. *Bortnovsky*, 820 F.2d 572, 574–75 (2d Cir. 1987) (finding district court abused its discretion in failing to grant bill of particulars where government produced over 4,000 documents but "did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified");

*United States* v. *Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) ("Perhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive *and* the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense."); *United States* v. *Falkowitz*, 214 F. Supp. 2d 365, 391 (S.D.N.Y. 2002) (granting bill of particulars where conspiracy lasted approximately four years and government produced over 100,000 documents). That is, "a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." *Mahaffy*, 446 F. Supp. 2d at 120. Notably, a request for a bill of particulars may not be denied merely because providing the information would divulge details of the government's evidence. *See United States* v. *Addonizio*, 451 F.2d 49, 64 n.16 (3d Cir. 1971).

Moreover, certain charges—including, as relevant here, fraud and conspiracy—are more likely to warrant a bill of particulars because they pose greater risk of unfair surprise and difficulty in preparing a defense. *See, e.g.*, *United States* v. *Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009) ("[F]raud charges . . . by their nature carry a greater potential for causing unfair surprise at trial due to their complexity."); *United States* v. *Agnello*, 367 F. Supp. 444, 450 (E.D.N.Y. 1973) ("In conspiracy cases, if the government is to rely upon proof of specific acts to establish the case, there is no question that the defendants alleged to have participated in such

9

acts should be furnished with sufficient detail to fairly apprise them of the transactions to be proved so that they will have a reasonable opportunity to meet the charges of performing the specific acts.").

## ARGUMENT

## I. THIS COURT SHOULD DISMISS COUNTS THREE AND FOUR OF THE INDICTMENT

This Court should dismiss Counts Three and Four because (i) they fail to allege facts supporting the essential interstate commerce element of an FCPA violation as to Mr. Schwartz; and (ii) the vague and ambiguous description of the counts make it unclear from the face of the Indictment whether Mr. Schwartz is charged with them. In the alternative, if the Court does not dismiss Counts Three and Four, it should order the government to disclose those portions of the grand jury transcript in which the prosecutors instructed the grand jury regarding these counts, in order to confirm that the grand jury in fact did indict Mr. Schwartz on these counts.

### A. This Court Should Dismiss Counts Three and Four Because They Fail to Allege the Use of Interstate Commerce Element of the FCPA as to Mr. Schwartz

This Court should dismiss Counts Three and Four against Mr. Schwartz because the Indictment does not actually allege that Mr. Schwartz used the "mails

10

or any means or instrumentality of interstate commerce," an essential element of an FCPA charge.  *See* 15 U.S.C. § 78dd-1(a).

"In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." *United States* v. *Hedaithy*, 392 F.3d 580, 589 (3d Cir. 2004) (quoting *United States* v. *Zauber*, 857 F.2d 137, 144 (3d Cir. 1988)); *see* Fed. R. Crim. P. 12(b)(3)(B).   An indictment must therefore contain specific factual allegations that permit the court to "decide whether they are sufficient in law to support a conviction, if one should be had."  *See Russell* v. *United States*, 369 U.S. 749, 768 & n.15 (1962).   This requirement is not merely ministerial; it is of Constitutional magnitude, flowing from both the Sixth Amendment right to be informed of the nature of any charge filed, as well as the Fifth Amendment protection against conviction "on the basis of facts not found by, and perhaps not even presented to, the grand jury."  *See id.* at 770.

As a result, an indictment must be dismissed if it does not contain facts establishing each of the essential elements of the crime charged.  *See, e.g.*, *United States* v. *Bergrin*, 650 F.3d 257, 264–65 (3d Cir. 2011) ("A district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" (citation omitted)); *United States* v. *Panarella*, 277 F.3d

11

678, 685 (3d Cir. 2002) (rejecting government's argument that indictment properly charges an offense "as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements"), *abrogated on other grounds by Skilling* v. *United States*, 561 U.S. 358, 410 (2010); *United States* v. *Mosberg*, 866 F. Supp. 2d 275, 286 (D.N.J. 2011) ("An indictment may not merely recite the essential elements of the offense charged, it must allege specific facts that fall within the scope of the relevant criminal statute."); *United States* v. *Bortnick*, No. 03-cr-414 (LDD), 2004 WL 2752471, at *1 (E.D. Pa. Nov. 29, 2004) ("The indictment must contain specific facts that satisfy all the elements of the alleged violation.").

Here, Counts Three and Four of the Indictment charge Mr. Schwartz with the substantive offense of violating the FCPA, 15 U.S.C. § 78dd-1. *See* Indict. Counts 2–4 ¶ 2. The FCPA applies where:

> (1) [an issuer, or any officer, director, employee, or agent of an issuer], (2) uses the "mails or any means or instrumentality of interstate commerce" (3) "corruptly" (4) "in furtherance of an offer, payment, promise to pay, or authorization" to pay money or "anything of value" to any person, (5) "knowing that all or a portion of" the payment would be "offered, given, or promised" to a "foreign official" (6) in order to influence any official act or decision, induce an action or an omission to act in violation of a lawful duty, or to secure any improper advantage, and (7) [where] the making of the payment or offer [is done] to assist in obtaining or retaining business for any person or company or directing business to any person or company.

12

*Chevron Corp.* v. *Donziger*, 974 F. Supp. 2d 362, 596 (S.D.N.Y. 2014) (listing elements of § 78dd-2(a) which, aside from applying to "a domestic concern" rather than an issuer, contains identical language to § 78dd-1(a)), *aff'd*, 833 F.3d 74 (2d Cir. 2016); *see also United States* v. *Lockheed Corp.*, No. 194-cr-226 (MHS), 1995 WL 17064259, at *5 (N.D. Ga. Jan. 9, 1995).  As a result, every count that charges Mr. Schwartz with violating the FCPA must allege facts sufficient to support each of these elements as a matter of law.

With respect to element two, "a defendant 'make[s] use of the mails or any means or instrumentality of interstate commerce,' 15 U.S.C. § 78dd-1(a), if he 'act[s] with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended.'"  *Sec. & Exch. Comm'n* v. *Straub*, No. 11-cv-9645 (RJS), 2016 WL 5793398, at *12 (S.D.N.Y. Sept. 30, 2016) (alteration in original) (quoting *United States* v. *Wolfson*, 405 F.2d 779, 783–84 (2d Cir. 1968)); *see also Pereira* v. *United States*, 347 U.S. 1, 8–9 (1954) (articulating this foreseeability-based test, for the first time, in a mail fraud case); *United States* v. *Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) (applying the *Pereira* foreseeability test to wire fraud interstate commerce element). Although an allegation of "direct use" of a means of interstate commerce is not required, an indictment charging a defendant with violating the FCPA must allege that the defendant "act[ed] with knowledge that the use of the mails will follow in

13

the ordinary course of business, or where such use can reasonably be foreseen." *See Straub*, 2016 WL 5793398, at *11–12 (quoting *Wolfson*, 405 F.2d at 783–84).

The Indictment identifies two alleged "means and instrumentalities of interstate and international commerce" upon which Counts Three and Four are based. *See* Indict. Counts 2–4 ¶ 2. Count Three is expressly based upon a May 20, 2014 "COBURN email to CC#1 and others instructing CC#1 to continue to freeze certain payments to the Construction Company." *See id.* Count Four is expressly based upon a May 13, 2015 "COBURN email to CC#1 and others authorizing Cognizant to pay the Construction Company for certain false change order requests in connection with the KITS Campus." *See id.*

Neither of these "means and instrumentalities of interstate and international commerce" alleges, in any way, shape, or form, the interstate commerce element of the FCPA as applied to Mr. Schwartz. The Indictment does not allege that Mr. Schwartz sent or received either email, or played any role in their transmission. Nor does the Indictment allege that Mr. Schwartz took any act "with knowledge that" such use of interstate commerce would "follow in the ordinary course of business" or where "such use [could] reasonably be foreseen." *Straub*, 2016 WL 5793398, at *12 (quoting *Wolfson*, 405 F.2d at 783–84). Indeed, the Indictment does not connect either email to Mr. Schwartz or identify when, how, or why such emails reasonably could have been foreseeable to him.

14

Counts Three and Four of the Indictment therefore do not properly allege that Mr. Schwartz used "any means or instrumentality of interstate commerce," and consequently allege facts that "fall beyond the scope of the relevant criminal statute" as to him. *See Bergrin*, 950 F.3d 257, 264–65 (citation omitted). Accordingly, this Court should dismiss Counts Three and Four against Mr. Schwartz for failure to properly allege each essential element of the charged offenses.

**B.      This Court Should Dismiss Counts Three and Four Because It Is Unclear Whether Mr. Schwartz Is Charged with These Counts**

This Court should dismiss Counts Three and Four because it is not clear from the face of the Indictment whether Mr. Schwartz is charged with these counts. An Indictment must be "a plain, concise and definite written statement of the essential facts constituting the offence charged," and where indictments fail to state the essential facts, courts may dismiss them in whole or in part. *United States* v. *Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting Fed. R. Crim. P. 7(c)(1)); *see also United States* v. *Curtis*, 506 F.2d 985, 991–92 (10th Cir. 1974) (dismissing indictment and observing it must contain "a statement of the facts and circumstances as will inform the accused *of the specific offense*, coming under the general description, *with which he is charged*" (emphases added)). Here, the vague and ambiguous drafting of Counts Three and Four in the Indictment creates uncertainty as to whether Mr. Schwartz is charged with those counts. The Indictment therefore

15

provides inadequate notice to Mr. Schwartz of the counts that he will be required to answer at trial.

The only indication in the Indictment that Mr. Schwartz may be charged with Counts Three and Four is that his name is listed in the prefatory prose of paragraph 2 leading into the individual descriptions of Counts Two through Four. *See* Indict. Counts 2–4 ¶ 2. But in the chart within paragraph 2 that particularizes Counts Two through Four, Mr. Schwartz is only mentioned in Count Two and is absent from Counts Three and Four:

| COUNT | APPROXIMATE DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|
| Two | April 21, 2014 | COBURN email to SCHWARTZ, CC#1, and CC#2 requesting a call the next morning to follow up from their discussion in their April 21, 2014 call. |
| Three | May 20, 2014 | COBURN email to CC#1 and others instructing CC#1 to continue to freeze certain payments to the Construction Company. |
| Four | March 13, 2015 | COBURN email to CC#1 and others authorizing Cognizant to pay the Construction Company for certain false change order requests in connection with the KITS Campus. |

As a result, in Counts Three and Four, unlike in Count Two, Mr. Schwartz is not identified as a sender or recipient of the underlying emails. Indeed, his name is completely absent from these two counts and is not mentioned in the "Means and

16

Instrumentalities of Interstate and International Commerce" that are specified as forming the basis for these counts. Because these two counts do not name Mr. Schwartz, let alone provide him with any notice of what he is alleged to have done, they should be dismissed as against him.

The deficiency in Counts Three and Four is made apparent when those counts are contrasted with the chart used to identify the charges in Counts Five through Eleven—which includes a column labeled "Defendant" specifying who is charged with each count:

| COUNT | APPROXIMATE DATE | DEFENDANT | FALSIFIED RECORD |
|---|---|---|---|
| Five | March 11, 2015 | COBURN | Spreadsheet and related approvals containing and incorporating false change order requests in connection with the KITS Campus. |
| Six | July 24, 2014 | COBURN | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended June 30, 2014. |
| Seven | August 1, 2014 | SCHWARTZ | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended June 30, 2014. |
| Eight | April 21, 2015 | COBURN | Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended March 31, 2015. |
| Nine | February 2, 2015 | SCHWARTZ | Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2014. |
| Ten | February 9, 2015 | COBURN | Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2014. |
| Eleven | February 6, 2016 | COBURN | Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2015. |

17

In contrast, the chart accompanying Counts Two through Four contains no "Defendant" column. The organization of the chart setting out Counts Two through Four and this internal inconsistency within the Indictment renders it vague and ambiguous as to whether Mr. Schwartz is charged with Counts Three and Four and, as set forth below, whether the grand jury found probable cause against him with regard to those counts. Accordingly, this Court should dismiss those counts as to Mr. Schwartz.[3]

**C.    If Counts Three and Four Are Not Dismissed, the Government Should Be Required to Disclose the Portions of the Grand Jury Transcript in Which the Prosecutors Advised the Grand Jury Regarding These Counts**

If the Court does not dismiss Counts Three and Four, it should at a minimum order disclosure of the relevant grand jury minutes necessary to establish whether the grand jury in fact indicted Mr. Schwartz on Counts Three and Four.

The government conclusorily asserts in its Response that Mr. Schwartz is charged with Counts Three and Four. *See* Ex. B at 1. Although the government may believe that to be the case, it is unclear whether the grand jury understood itself to be charging Mr. Schwartz with those counts. Standard grand jury practice consists of furnishing a copy of the indictment to the grand jurors or reading it to them. But,

---

[3]    In addition, Counts Three and Four should be dismissed because they are multiplicitous, as set forth in Mr. Coburn's motion to dismiss, which Mr. Schwartz joins. *See* Memorandum of Law in Support of Defendant Gordon J. Coburn's Motion to Dismiss at Part I; *infra* Part III.

18

given the facial ambiguity of Counts Three and Four, the Court should not be satisfied that the Indictment itself adequately advised the grand jury that the government intended to charge Mr. Schwartz with those two counts. It is thus necessary to see how the government advised the grand jury. *See Russell*, 369 U.S. at 770 ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.").

The Supreme Court has held that parties seeking disclosure of grand jury transcripts must show: "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *United States* v. *Thompson*, No. 17-cr-094 (CCC), 2019 WL 102413, at *7 (D.N.J. Jan. 4, 2019) (citing *Douglas Oil Co.* v. *Petrols Stops Nw.*, 441 U.S. 211, 222 (1979)); *see also id.* ("In order for the Court to grant disclosure of the transcripts, 'a party must show a particularized need for that information which outweighs the public interest in secrecy.'" (quoting *United States* v. *McDowell*, 888 F.2d 285, 289 (3d Cir. 1989)); *United States* v. *White*, 104 F. Supp.

19

120, 121 (D.N.J. 1952) ("[T]he blanket of secrecy is not so imprisoning as to defeat justice . . . . [A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." (citations and quotation omitted)).

Ordering such limited disclosure here would strike the proper balance between maintaining the grand jury's secrecy and serving the ends of justice. Indeed, the Federal Rules of Criminal Procedure permit courts to require disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

The need for such disclosure here is greater than the need for continued secrecy because the grand jury's function already has ended. "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co. of California*, 441 U.S. at 223. Moreover, there is no risk of revealing a grand juror's identity or the identity or testimony of any grand jury witnesses. Indeed, Mr. Schwartz requests only the portions of the transcript in which the government advised the grand jury with respect to Counts Three and Four. The disclosure here of such limited portions of the grand jury transcript will serve the ends of justice by ensuring that Mr. Schwartz is only forced to answer at trial for the charges for which he was actually indicted. *See id.* at 222 (finding that "[p]arties

20

seeking grand jury transcripts under Rule 6(e) must show that . . . their request is structured to cover only material so needed"); *United States* v. *Deerfield Speciality Papers, Inc.*, 501 F. Supp. 796, 821 (E.D. Pa. 1980) (ordering government to disclose portions of grand jury transcript); *see also Russell*, 369 U.S. at 771 ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." (quotations and citation omitted)).

Thus, if Counts Three and Four are not dismissed, this Court should order disclosure, either to the defense, the Court, or both, of these limited portions of the grand jury transcript so that the Court can perform its constitutional function of assuring that Mr. Schwartz in fact has been charged in those counts.

## II.   THIS COURT SHOULD GRANT A BILL OF PARTICULARS

In light of the government's Response, refusing to answer nearly all of Mr. Schwartz's written requests for particulars, the Court should grant a bill of particulars with respect to the information set forth below.   The requested information is necessary for Mr. Schwartz to prepare his defense (including conducting his own investigation), avoid unfair surprise at trial, and protect against future prosecutions involving the same alleged conduct. *See Moyer*, 674 F.3d at 203.

21

**A.      The Government Should Be Required to Identify the Co-Conspirators with Whom Mr. Schwartz Allegedly Conspired or Acted**

In almost half of the paragraphs of the 24-page Indictment, the Government alleges that unnamed "co-conspirators" and/or "others" conspired or acted with Mr. Schwartz.  *See* Indict. Count 1 ¶¶ 2–4, 15, 17, 24–25, 27(a), 29(a)–(c), (e)–(h), 30(g); *id.* Counts 2–4 ¶ 2.  But other than Mr. Schwartz and Mr. Coburn, the government fails to name a single co-conspirator, participant, or "other" involved in the alleged offenses.

Before filing this motion, Mr. Schwartz asked the government to confirm his understanding (based on the discovery) of the identities of "CC#1," "CC#2," and "CC#3."  *See* Ex. A at 2.  Mr. Schwartz also asked the government to provide the names of all unindicted co-conspirators, whether referenced in the Indictment or not.  *See id.*  The government refused, offering no explanation for why Mr. Schwartz must guess at the identities of his alleged co-conspirators or the "others" identified in the Indictment.  *See* Ex. B.

Courts routinely require the government to disclose the identities of unnamed co-conspirators, participants, and "others" in an indictment, recognizing that such information is necessary for a defendant to prepare his defense. *See, e.g.*, *United States* v. *Gatto*, 746 F. Supp. 432, 477 (D.N.J. 1990) (granting bill of particulars requiring government to provide names of all co-conspirators,

22

participants, and "others" absent government showing that "disclosure might endanger the safety of specific witnesses"), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991); *see also United States* v. *Redding*, 540 F. Supp. 2d 1184, 1188 (D. Kan. 2008) (granting bill of particulars "detailing the alleged co-conspirators known to the government . . . so that defendant can better defend his case either by rebutting the alleged co-conspirator statements or by confronting any witnesses against him"); *United States* v. *Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (granting bill of particulars as to identities of unindicted co-conspirators where conspiracy lasted approximately three years and the government produced over 200,000 pages of documents, reasoning identities were necessary "to prevent unfair surprise and enable defendants to prepare for trial").[4]

---

[4]  *See also United States* v. *Vastola*, 670 F. Supp. 1244, 1270 (D.N.J. 1987) (granting bill of particulars as to "names of all co-conspirators or participants in the alleged offenses"); *see also United States* v. *Mariani*, 90 F. Supp. 2d 574, 592 (M.D. Pa. 2000) (granting bill of particulars in mail fraud conspiracy as to identities of "co-conspirators and other participants in the alleged scheme to defraud" where indictment referred to "weighmasters," "accounting personnel," and "upper management," and reasoning that such information was necessary for defendants to "know with certainty whom the government contend[ed] were involved in the fraudulent scheme"); *United States* v. *Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (granting bill of particulars as to "names of the unindicted co-conspirators not already identified in the indictment" and "names of all alleged co-conspirators regardless of whether they will be called as witnesses at trial"); *United States* v. *Wilson*, No. 95-cr-668 (LMM), 1997 WL 10035, at *2 (S.D.N.Y. Jan. 10, 1997) (granting bill of particulars as to "all persons known by the government to have conspired with the defendants"); *United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985) (granting bill of particulars in conspiracy case as to "approximate date, time and location where it is claimed that

23

Based on the foregoing, the Court should order the government to confirm the identities of "CC#1," "CC#2," and "CC#3," and to disclose the identities of any other co-conspirators, participants, and "others," with whom Mr. Schwartz allegedly conspired or acted, whether they are referenced in the Indictment or not.

**B.    The Government Should Be Required to Identify Other Key Unnamed Individuals and Entities**

In addition to "CC#1," "CC#2," and "CC#3," Mr. Schwartz asked the government to confirm his understanding of the identity of the "Development Authority," as used in the Indictment. *See* Ex. A at 2–3. Mr. Schwartz also asked the government to provide the identity of the Indian government officials and government agencies referenced in the Indictment, as well as the identity of the "special third-party consultant" and "new liaison consultant" referenced in the Indictment. *See id.* In addition, throughout the Indictment, the government loosely alleges actions taken by entities (including Cognizant, L&T, and government agencies), without specifying the individual who acted on behalf of the entity. *See* Indict. Count 1 ¶¶ 3 ("Cognizant would reimburse the Construction Company through construction invoices at the end of the KITS Campus project."), 4–5, 7–10, 12–13, 15–16, 20, 22–23, 25–26, 29(b)–(d), 29(f), 30(c)–(d), 30(g); *id.* Counts 2–4 ¶ 2.

---

[defendant] conspired" and "names of other co-conspirators with whom [defendant] allegedly conspired").

24

We asked the government to identify the specific individuals who acted on the entity's behalf, and to identify all remaining references to "others" in the Indictment that did not refer to alleged co-conspirators.  *See* Ex. A at 2.  With few exceptions, the identities of these individuals cannot be inferred or deduced from the discovery produced by the government.  Indeed, where Mr. Schwartz believed that the discovery enabled him to identify such individuals, he suggested them to the government and asked for confirmation.  *See id.*  The government refused.  *See* Ex. B.

This request is not a matter merely of curiosity: to the contrary, it goes to fundamental issues of notice embodied in the Due Process Clause of the Fifth Amendment.  The Indictment alleges a bribery scheme that spanned two years and involved numerous individuals in at least two countries who were affiliated with various companies and government agencies.  But with respect to Mr. Schwartz's own conduct, it alleges only that he participated in two video conference calls from the United States.  Other than the individuals on those two calls, Mr. Schwartz is not alleged to have known the identities of any other individuals who allegedly participated in the scheme—including the individuals who allegedly acted on behalf of Cognizant and L&T, the consultants who allegedly paid the bribe on L&T's behalf, and the government officials who allegedly were bribed.  Mr. Schwartz thus is faced with the daunting prospect of defending himself regarding acts that allegedly

25

occurred halfway around the world without ever having known the identities of any of those involved.  To adequately understand and defend against the charges in the Indictment, Mr. Schwartz must know the identities of the individuals alleged to have been involved in the various aspects of the bribery scheme and the roles they are alleged to have played. The Court should order the government to disclose this fundamental information.

> **C.** **The Government Should Be Required to Identify the Places Where Mr. Schwartz Allegedly Acted and Conspired**

In light of the Indictment's allegations of conduct that occurred "elsewhere"—a word inserted into the Indictment by the government and presumably agreed to by the grand jury—Mr. Schwartz asked the government for the  locations of relevant acts alleged in the Indictment.  *See* Ex. A at 2.  Again, the government refused to provide this information without a court order.  *See* Ex. B.

Just as courts routinely require the government to disclose the identities of unnamed co-conspirators and participants, they also require the government to disclose the specific locations where each event alleged in the indictment occurred. *See, e.g.*, *Gatto*, 746 F. Supp. at 477 ("To the extent that the government is able to do so, the precise date and place of each event alleged in the indictment should be provided."); *Vastola*, 670 F. Supp. at 1270 (requiring government to disclose "the precise date and place of each event alleged in the indictment"); *United States* v. *Holman*, 490 F. Supp. 755, 762 (E.D. Pa. 1980) (requiring government to disclose

"the exact date and place, if known to the Government, of each event alleged in the indictment").

Here, the Indictment alleges that each charge is based on conduct that occurred in this District and "elsewhere." For example, Count One alleges that "[f]rom in or about January 2014 through in or about January 2016, in the District of New Jersey *and elsewhere*, the defendants, GORDON J. COBURN and STEVEN SCHWARTZ, did knowingly and willfully conspire and agree with others to commit offenses against the United States." *See* Indict. Count 1 ¶ 27 (emphasis added); *see also id.* ¶ 30; *id.* Counts 2–4 ¶ 2; *id.* Counts 7 & 9 ¶ 2; *id.* Count 12 ¶ 2. Given the broad nature of these allegations, Mr. Schwartz cannot reasonably infer or deduce from the discovery produced by the government the locations of each event that constitute the bases of the charges against him.

In this case, the locations of each event alleged in the Indictment and constituting the bases of the charges against Mr. Schwartz are necessary for him to prepare his defense (including conducting his own investigation) and to avoid unfair surprise at trial. *See Moyer*, 674 F.3d at 203.

**D.    The Government Should Be Required to Identify and Provide Details Regarding the Payments Made in Furtherance of the Alleged Bribery Scheme**

The Indictment alleges a scheme to bribe one or more government officials in India and then to conceal that payment. *See* Indict. Count 1

27

¶¶ 2–3. According to the Indictment, Mr. Schwartz authorized payment of the bribe and reimbursement to L&T for payment of that bribe. *See id.* ¶¶ 11–13. As part of the scheme, L&T is alleged to have submitted false change orders (also referred to as variation claims) that sought reimbursement for the bribe payment "and related expenses" and which concealed the purpose of this reimbursement. *See id.* ¶¶ 4, 22–25. Cognizant allegedly then issued "several separate payments" to L&T to cover the cost of L&T's change order request. *See id.* ¶ 26. Mr. Schwartz is not alleged to have played any role in structuring or making these payments, and the Indictment does not provide any information regarding the alleged payments beyond the amounts of the requested bribe and the reimbursement to L&T. *See id.* ¶¶ 23–26. Indeed, the Indictment does not even allege whether any bribe was in fact paid at all.

We asked the government to provide, for each allegation that refers to "related expenses," a description and the amount of each specific expense. *See* Ex. A at 2; *see also* Indict. Count 1 ¶¶ 23, 26, 29(f). Again, the government refused. *See* Ex. B.

Particularly where the government's charges are based upon monetary payments, courts frequently require the government to disclose information about those payments, including the dates, amounts, forms, places, and recipients. *See, e.g.*, *Wilson*, 1997 WL 10035, at *2 (granting bill of particulars requiring

28

government to specify payment dates, forms, places, and recipients); *United States* v. *McGuinness*, 764 F. Supp. 888, 894 (S.D.N.Y. 1991) (granting bill of particulars specifying approximate amount and date of each payment).

Given the government's theory that Mr. Schwartz conspired to conceal the illegal payment by reimbursing L&T through falsified change orders, the specifics of the payments relating to these allegations are necessary for him to prepare his defense, avoid unfair surprise at trial, and protect against future prosecutions involving the same alleged conduct. *See Moyer*, 674 F.3d at 203. To the extent the government has disclosed certain of this information among the emails, charts, spreadsheets, and invoices relating to various payments that the government produced among the almost 200,000 documents provided in discovery, Mr. Schwartz "should not be left to [his] own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations," including the specific payments or change orders the government alleges were fraudulent or part of the bribery scheme. *See United States* v. *Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (granting bill of particulars specifying allegedly fraudulent bills to insurers where government produced approximately 17,000 pages of documents).

Accordingly, this Court should grant a bill of particulars requiring the government to disclose a description and the amount of each specific expense related

29

to the alleged fraudulent reimbursement.  This Court also should grant a bill of particulars requiring the government to disclose: (i) whether a bribe in fact was paid to a government official, and if so, the form and date of the payment, as well as the identities of the individuals who made and received the payment; (ii) the specific change order and variation requests the government alleges were falsified in order to conceal the reimbursement, including the "related approvals" alleged in paragraph 29(g)(i), as well as the identities of the individuals who allegedly falsified these documents and the dates on which they did so; and (iii) for each of the "several separate payments" that Cognizant allegedly issued to L&T, *see* Indict. Count 1 ¶ 26, the dates, amounts, forms, places, senders, and recipients, as well as which of these payments allegedly included the reimbursement at issue.

> **E.    The Government Should Be Required to Specify Whether Mr. Schwartz Is Alleged to Have Committed the Charged Offenses Directly, Aided or Abetted the Commission of the Offenses, or Both**

The Indictment charges Mr. Schwartz with violating the FCPA, falsifying books and records, and circumventing internal accounting controls in violation of, *inter alia*, 18 U.S.C. § 2.  *See* Indict. Counts 2–4, 7, 9, 12.  The Indictment, however, does not specify whether Mr. Schwartz is charged under this statute with committing the offenses directly or aiding and abetting the commission of the offenses.  Accordingly, this Court should grant a bill of particulars requiring the government to disclose, for each count for which he is charged with violating

18 U.S.C. § 2, whether Mr. Schwartz allegedly committed the offense directly or aided and abetted its commission. If the government alleges that Mr. Schwartz aided and abetted commission of the offense, it should be ordered to disclose the identities of the principal offenders whom he allegedly aided and abetted.

Courts have granted bills of particulars where the indictment does not specify which defendant was alleged to have actually committed the offense and which was alleged to have aided, abetted, or caused the commission of the offense, or the means by which the defendant did so. *See United States* v. *Agnello*, 367 F. Supp. 444, 450–51 (E.D.N.Y. 1973); *see also United States* v. *Green*, No. 92-cr-159 (JTC), 1993 WL 652793, at \*8–9 (W.D.N.Y. Sept. 21, 1993) (ordering government to "state whether it will be claimed that the Defendant is a principal or an aider or abettor" because "[e]ven though it will not affect the Defendants' criminal liability for the acts involved, it would appear to be necessary in order to enable the Defendants to prepare for trial"); *United States* v. *Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987) (ordering government to specify whether defendant "was an aider and abettor or was a principal").

This information is particularly necessary here, given the FCPA charges in the Indictment. In *United States* v. *Hoskins*, 902 F.3d 69, 84 (2d Cir. 2018), the Second Circuit held that the FCPA did not create liability for "nonresident foreign nationals, acting outside American territory, who lack an agency relationship

31

with a U.S. person, and who are not officers, directors, employees, or stockholders of American companies." And courts in this Circuit have found that a person cannot be held liable for aiding and abetting the commission of an offense for which the principal cannot be held liable under the applicable statute. *See, e.g.*, *Failla* v. *City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) (noting that "it is fundamental to aiding and abetting liability that the aider and abettor acted in relation to a principal"); *Joseph* v. *N.J. Transit Rail Operations, Inc.*, No. 12-cv-1600 (JLL), 2013 WL 5676690, at *13 (D.N.J. Oct. 17, 2013) (finding individual defendants could not be held liable for violations of 18 U.S.C. §§ 1981, 1983, and New Jersey Law Against Discrimination ("LAD") because principal could not be held liable under those statutes), *aff'd*, 586 F. App'x 890 (3d Cir. 2014); *Roman* v. *Waste Mgmt. of N.J.*, No. 10-cv-4337 (JAP), 2011 WL 1807642, at *5 (D.N.J. May 12, 2011) ("It is only possible to find an individual liable for aiding and abetting under the LAD . . . when the employer may be held liable under the LAD."). In light of this case law, Mr. Schwartz is entitled to know whether the government alleges that he aided and abetted any of the charged offenses and, if so, the identities of the principal offenders, so that he can determine whether to challenge the legal sufficiency of any aiding and abetting charges. The government's refusal to provide this information, which is absent from the Indictment, does not allow for this inquiry.

**F.    The Government Should Be Required to Identify How the Books, Records, and Accounts That Mr. Schwartz Allegedly Falsified or Caused to Be Falsified Were False and His Alleged Role**

The Indictment alleges that Mr. Schwartz falsified or caused to be falsified Cognizant's books, records, and accounts. *See* Indict. Count 1 ¶¶ 4, 27(b), 29(g); *id.* Counts 7 & 9 ¶ 2. The Indictment, however, does not allege the ways in which the documents were falsified, let alone Mr. Schwartz's alleged role in falsifying those documents.

In cases where the government's charges are based upon false statements, courts regularly require the government to specify the false statements alleged in the indictment, as well as the defendant's role in making or causing those statements to be made. *See, e.g.*, *United States* v. *Schiff*, 538 F. Supp. 2d 818, 825 (D.N.J. 2008) (noting "Court ordered the Government to list all alleged misstatements and omissions it would seek to prove"), *aff'd*, 602 F.3d 152 (3d Cir. 2010); *Nachamie*, 91 F. Supp. 2d at 574 (granting bill of particulars requiring government to "identify each and every one of the 'false and misleading' claims which were allegedly submitted and/or filed as part of the conspiracy . . . that the Government intends to prove at trial"); *United States* v. *Hsia*, 24 F. Supp. 2d 14, 32 (D.D.C. 1998) (granting "bill of particulars disclosing how [defendant] is alleged to have caused each of the false statements to be made"); *United States* v. *Rogers*, 617 F. Supp. 1024, 1029 (D. Colo. 1985) (granting defendants' requests for

33

particularization of allegedly false statements, and requiring government to disclose "the substance, date, time, and place of each false statement or concealment and the persons involved").

Given the government's allegations that Mr. Schwartz falsified or caused to be falsified Cognizant's books, records, and accounts, particulars setting forth which documents were allegedly falsified, what the falsity was, and Mr. Schwartz's alleged role in falsifying them are necessary to prepare his defense (including conducting his own investigation), avoid unfair surprise at trial, and protect against future prosecutions involving the same alleged conduct. *See Moyer*, 674 F.3d at 203. Mr. Schwartz "should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information." *Trie*, 21 F. Supp. 2d at 21–22 (requiring government to provide defendant charged with making false statements "information as to exactly what the false statements are, what about them is false, who made them, and how [defendant] caused them to be made").

Accordingly, this Court should grant a bill of particulars requiring the government to disclose: (i) for Count One, the ways in which Cognizant's Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaires for the years ended December 31, 2014 and December 31, 2015 were false (to the extent not

34

specified in paragraph 29(g)(ii)–(iii)), and Mr. Schwartz's alleged role in such falsification, as well as the specific books, records, and accounts that allegedly are false (a matter which is ambiguous given the use of the phrase "for example" in paragraph 29(g), suggesting that the documents listed in that paragraph may not be a complete list); (ii) for Count Seven, the ways in which the Sarbanes-Oxley Quarterly Global 302 Certification for the Quarter Ended June 30, 2014 was allegedly false and Mr. Schwartz's alleged role in falsifying or causing to falsify it; and (iii) for Count Nine, the ways in which the Annual Report on Form 10-K and Proxy Statement Disclosure Questionnaire for the Year Ended December 31, 2014 were allegedly false and Mr. Schwartz's alleged role in falsifying or causing to falsify them.

**G.    The Government Should Be Required to Identify How the Internal Accounting Controls Allegedly Were Violated and Mr. Schwartz's Alleged Role in Doing So**

The Indictment alleges that Mr. Schwartz circumvented and failed to implement Cognizant's internal accounting controls. *See* Indict. Count 1 ¶¶ 4, 27(c), 28, 29(g)(ii), 29(h); *id.* Count 12 ¶ 2. The Indictment, however, does not allege the ways in which the internal controls were circumvented, what internal controls were not implemented, and Mr. Schwartz's alleged role in any of this. Indeed, it is not

35

even clear from the face of the Indictment whether he is charged with circumventing Cognizant's internal controls or failing to implement Cognizant's internal controls.[5]

Accordingly, this Court should grant a bill of particulars requiring the government to disclose: (i) whether Mr. Schwartz is charged with circumventing Cognizant's internal controls or with failing to implement Cognizant's internal controls; (ii) if the government alleges that Mr. Schwartz or his co-conspirators circumvented the internal controls, the specific controls allegedly circumvented (rather than only the subject matters of the exemplar controls identified in paragraph 29(h), which itself may not be a complete list given the "including, but not limited to" language), the ways in which those controls allegedly were circumvented, and Mr. Schwartz's alleged role; (iii) if the government alleges that Mr. Schwartz or his co-conspirators failed to implement Cognizant's internal controls, the specific internal controls allegedly not implemented (rather than only the subject matter of the exemplar controls identified in Count Twelve, ¶ 2, which itself may not be a complete list given the "including, but not limited to" language), the ways in which those controls allegedly were not implemented, and Mr. Schwartz's alleged role; and (iv) the ways in which Cognizant's system of internal controls failed to provide the

---

[5] For this reason, Count Twelve should be dismissed for repugnancy, as set forth in Mr. Coburn's motion to dismiss, which Mr. Schwartz joins. *See* Memorandum of Law in Support of Defendant Gordon J. Coburn's Motion to Dismiss at Part II; *infra* Part III.

reasonable assurances described in paragraph 27(c) of the Indictment.    This

information is necessary for Mr. Schwartz to prepare his defense (including

conducting his own investigation), avoid unfair surprise at trial, and protect against

future prosecutions involving the same alleged conduct. *See Moyer*, 674 F.3d at 203.

**H.    The Government Should Be Required to Particularize the Purpose for Which Mr. Schwartz Allegedly Conspired to Violate and Violated the FCPA and, if Counts Three and Four Are Not Dismissed, His Alleged Use of Interstate Commerce with Respect to Those Counts**

It is an element of an FCPA violation that the unlawful payment must

be made for the purpose of influencing the conduct of a foreign official.    *See*

*Chevron Corp.*, 974 F. Supp. 2d at 596.    The Indictment alleges that Mr. Schwartz

conspired to violate and violated the FCPA for four such purposes:

> (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Cognizant in obtaining and retaining business, for and with, and directing business to, Cognizant and others.

Indict. Count 1 ¶ 27(a); *id.* Counts 2–4 ¶ 2.    But these allegations merely quote the

FCPA statute and do not particularize any of the four stated purposes. *See* § 78dd-

1(a); *Moyer*, 674 F.3d at 203 ("When an indictment merely quotes the language of a

statute and that statute contains generalities, the indictment must factually define those generalities, descending into particulars."); *United States* v. *Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) ("An indictment must allege more than just the essential elements of the offense.").   The government should be required to inform Mr. Schwartz which of these alleged purposes it intends to prove and to particularize the allegations as to each such purpose.

In further support of the allegations regarding the purposes for which Mr. Schwartz conspired to violate and violated the FCPA, the Indictment alleges that Mr. Coburn and Mr. Schwartz "authorized Cognizant and its agents to pay and cause to be paid an approximately $2 million bribe to any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official to secure and obtain a planning permit required for Cognizant to construct a large office campus in India." Indict. Count 1 ¶ 27(a).  With respect to this allegation, this Court should grant a bill of particulars requiring the government to disclose: (i) the identities of any agents of Cognizant that Mr. Schwartz and Mr. Coburn allegedly authorized to pay or cause to be paid the illegal payment, other than CC#1 and CC#2; (ii) the "person" to whom the illegal payment was made; (iii) the amount Mr. Schwartz and Mr. Coburn knew or believed would be offered, given, or promised to a foreign official; (iv) the amount offered, given, or promised to a foreign official; and (v) the identity of the

38

individuals who offered, gave, or promised money to a foreign official and whether they did so directly or indirectly. *See United States* v. *Pressley*, 865 F. Supp. 2d 606, 610 (D.N.J. 2012) (referencing court-ordered bill of particulars that set forth amounts, dates, and sources of bribe payments); *United States* v. *Dean*, 266 F. Supp. 159, 160 (S.D.N.Y. 1966) (granting bill of particulars setting forth approximate date, time, and location that defendant received the bribe, from whom he received the bribe, and form of the payment).

Additionally, if Counts Three and Four are not dismissed, this Court should require the government to specify Mr. Schwartz's alleged use of the "Means and Instrumentalities of Interstate and International Commerce" with respect to those counts. As discussed above, Mr. Schwartz is not the sender or a recipient of either of the two emails identified as forming the basis of the interstate commerce element of the FCPA violations charged in those counts. *See* Indict. Counts 2–4 ¶ 2; *see also supra* Parts I.A–B. The Indictment does not allege that he engaged in any conduct with knowledge that such uses of interstate commerce would follow in the ordinary course of business or where such uses could reasonably be foreseen. Indeed, the Indictment does not connect Mr. Schwartz to those two emails in any way—it is entirely devoid of detail as to what role Mr. Schwartz allegedly played in committing the offenses alleged in Counts Three and Four. The government

39

therefore should be required to identify the conduct of Mr. Schwartz that it alleges satisfies the interstate commerce element with respect to these counts.

**I.     The Government Should Be Required to Identify the Alleged Benefits That Mr. Schwartz and His Alleged Co-Conspirators Received**

The Indictment alleges that the goal of the conspiracy was for Mr. Schwartz, Mr. Coburn, and their alleged co-conspirators to illegally benefit Cognizant and themselves. *See* Indict. Count 1 ¶ 28. The Indictment, however, does not allege the ways in which the conspiracy benefited Mr. Schwartz personally nor adequately allege the ways in which the conspiracy benefited his alleged co-conspirators.

Courts have granted bills of particulars requiring the government to particularize the benefits received in bribery schemes. Such information is necessary so that a defendant can prepare his defense, including by "demonstrat[ing] either that he never obtained [the alleged benefit] or that he obtained it legitimately." *See Trie*, 21 F. Supp. 2d at 22 (granting bill of particulars requiring government to particularize benefits defendant received in alleged bribery scheme); *see also United States* v. *Ganim*, 225 F. Supp. 2d 145, 155–56 (D. Conn. 2002) (granting bill of particulars requiring government to particularize benefits defendant received in alleged bribery scheme because "such particularization [was] shown to be necessary to enable him to prepare his defense and to avoid unfair surprise at trial").

Consistent with these cases, and in order to provide Mr. Schwartz the notice that the law and the Constitution require, this Court should grant a bill of particulars requiring the government to disclose: (i) the ways in which Mr. Schwartz personally benefited, or expected to personally benefit, from the alleged conspiracy and (ii) the ways in which each of Mr. Schwartz's alleged co-conspirators personally benefited, or expected to personally benefit, from the alleged conspiracy.

## III.    MR. SCHWARTZ JOINS IN MR. COBURN'S MOTIONS

Finally, Mr. Schwartz joins in the Motion to Dismiss and Motion for a Bill of Particulars filed by Mr. Coburn. *See Goodall-Gaillard* v. *N.J. Dep't of Corr.*, No. 09-cv-954 (KM), 2014 WL 2872086, at *23 (D.N.J. June 24, 2014) (noting that "[e]ach set of Defendants joins in the legal arguments set forth by the other" in their motions for summary judgment).

## CONCLUSION

For the foregoing reasons, this Court should grant (i) Mr. Schwartz's motion to dismiss Counts Three and Four of the Indictment and (ii) the requested bill of particulars.

41

Dated:  New York, New York
           November 15, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:  /s/ Theodore V. Wells, Jr.
      Theodore V. Wells, Jr.

Roberto Finzi
Justin D. Lerer
Meredith A. Arfa
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
twells@paulweiss.com
rfinzi@paulweiss.com
jlerer@paulweiss.com
marfa@paulweiss.com

-and-

42

Jeremy I. Bohrer
Jonathan E. Jason
Arthur T. Tergesen
BOHRER PLLC
One Penn Plaza, Suite 2520
New York, New York 10119
(212) 303-3314
jb@bohrerpllc.com
jj@bohrerpllc.com
atergesen@bohrerpllc.com

-and-

Lawrence S. Lustberg
Daniel B. Weinstein
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
llustberg@gibbonslaw.com
dweinstein@gibbonslaw.com

*Attorneys for Defendant Steven E. Schwartz*

43