```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,        .
                                 .
        Plaintiff,               .
                                 .  Case No. 19-cr-120
vs.                              .
                                 .  Newark, New Jersey
GORDON J. COBURN, STEVEN         .  August 9, 2023
SCHWARTZ,                        .
                                 .
        Defendant.               .
```

                    TRANSCRIPT OF RECORDED OPINION
                  BY THE HONORABLE MICHAEL A. HAMMER
                    UNITED STATES MAGISTRATE JUDGE


This transcript has been **TEMPORARILY SEALED (AVAILABLE FOR PARTIES; NOT AVAILABLE FOR THE PUBLIC)** pursuant to Loc. Civ. R. 5.3(c)(2).


APPEARANCES:

 For the Government:    No one was present



 For the Defendant:    No one was present




Audio Operator:

Transcription Service:        KING TRANSCRIPTION SERVICES
                              3 South Corporate Drive, Suite 203
                              Riverdale, NJ  07457
                              (973) 237-6080



Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1                    (Commencement of proceedings)

2

3              THE COURT:  Presently before the Court is the

4    United States v. Gordon Coburn and Steven Schwartz, Criminal

5    No. 19-120.

6              This Report and Recommendation will address the

7    privilege disputes between Defendants Gordon J. Coburn and

8    Steven Schwartz, on the one hand, and nonparty Cognizant

9    Technology Solutions Corporation ("Cognizant") on the other,

10   pursuant to the May 18, 2023, Order of the District Court.

11   [D.E. 481].  Those disputes are presented in a series of

12   filings, including the following briefs, memoranda, and

13   exhibits attached thereto:  (1) Defendants' Moving Brief,

14   D.E. 486; (2) Cognizant's Brief in Opposition, D.E. 488; (3)

15   Defendants' Reply Brief, D.E. 491; (4) Defendants' July 19,

16   2023, Letter D.E. 494; (5) Cognizant's July 24, 2023, Letter,

17   D.E. 496; (6) Defendants' July 31, 2023, Letter; and (7)

18   Judge McNulty's August 2, 2023, Order, D.E. 498.

19             This Court issues this Report and Recommendation

20   under seal in view of the fact that many, if not most, of the

21   briefs and exhibits have been filed under seal.  The parties

22   will then meet and confer on a mutually agreeable redacted

23   version of the Opinion and submit same to the Court within 21

24   days of its issuance.

25             Because Defendants, Cognizant, and the Government

1  are well familiar with the extensive background and

2  litigation history of this matter, as well as Judge McNulty's

3  prior rulings concerning the subpoenas issued to Cognizant,

4  the Court will proceed directly to the privilege disputes

5  before it and will address the litigation history and Judge

6  McNulty's prior rulings only as pertinent to resolution of

7  the disputes.

8           In their moving brief, the Defendants identify

9  three categories of documents at issue:

10              1. Documents and communications for which

11              Cognizant's privilege log shows that no privilege

12              ever attached (nearly 7,000 entries).  Defendants

13              argue documents within this first category fall

14              into one of four sub-categories, as follows:

15                  (A) Documents and communications that do not

16                  reflect the participation of a lawyer;

17                  (B) Documents and communications that demonstrate

18                  that a lawyer was copied on the communication but

19                  was neither a sender nor a recipient thereby

20                  showing that no legal advice was conveyed;

21                  (C) Documents and communications for which the

22                  subject-matter line does not indicate the

23                  provision or receipt of legal advice; and

24                  (D) Documents and communications that included a

25                  third party, which Defendants assert vitiated the

1   privilege.

2   2. The second category of documents concern those

3   for which Defendants assert Cognizant disclosed the

4   pertinent subject matter to the Government in the

5   course of cooperating and thereby waived the

6   privilege.  Defendants assert that documents in

7   this second category include:

8    (A) Documents and communications concerning

9    Cognizant's efforts to obtain the KITS planning

10    permit alleged in the indictment;

11    (B) Documents and communications regarding other

12    bribes that Cognizant allegedly paid in India but

13    which are not charged in the indictment; and

14    (C) Documents and communications concerning

15    Cognizant's Foreign Corrupt Practices Act

16    ("FCPA") policies, of which the Defendants are

17    accused in Count 12 of the Indictment with

18    circumventing or otherwise violating.

19   (3) The third category of documents at issue are

20   those that, the Defendants assert, demonstrate

21   their active assistance in and cooperation with

22   Cognizant's internal investigation.  For these

23   documents, the Defendants assert that at the

24   Garrity/Brady hearing before Judge McNulty,

25   Cognizant's outside counsel, Karl Buch, Esq.,

1          acknowledged the existence of documents that

2          Cognizant had not produced showing the Defendants'

3          cooperation with the internal investigation.  As

4          will be discussed herein, during that hearing,

5          Mr. Buch testified that Cognizant had not produced

6          those documents based on the attorney-client

7          privilege.

8          Cognizant contends that a categorical approach to

9    considering these privilege issues is unworkable, and that

10   the Court must conduct a "document-by-document in camera

11   review."  See, e.g., Cognizant's Opposition Brief, D.E. 488,

12   at 10, 22.  Cognizant also requested an additional thirty

13   days to provide an in camera brief explaining why it withheld

14   each of the challenged documents.  Id. at 22.

15         The Court disagrees with Cognizant that only a

16   document-by-document in camera review is appropriate to

17   resolve these disputes.  First, the Court does not rule on a

18   blank slate.  The parties have litigated these privilege

19   issues for well more than two years, and the District Court,

20   itself through a largely categorical review, has issued a

21   series of comprehensive rulings that define the scope of

22   production under Federal Rule of Criminal Procedure 17 and

23   the scope of Cognizant's waiver.  Moreover, Cognizant

24   provides scant authority for the proposition that an in

25   camera review is necessary whenever privilege is in dispute.

1   In fact, in camera review is generally discouraged as a

2   first-resort option.  See, e.g. Bogosian v. Gulf Oil

3   Corporation, 738 F.2d 587, 595 (3d Cir. 1984) (noting that

4   although certain situations require in camera review, "[w]e

5   do not generally encourage extensive in camera examination of

6   documents by the district court.").  The Court has broad

7   discretion in devising the procedure to resolve a subpoena

8   dispute, including where privilege is an issue.  Take, for

9   example, Greene v. Philadelphia Housing Authority, 484

10  F.App'x 681, 682 (3d Cir. 2012).  In that case, Greene, the

11  former executive director of the Philadelphia Housing

12  Authority, appealed the district court's order denying a

13  preliminary injunction preventing the release of invoices for

14  legal services for matters in which he was sued individually

15  and represented by counsel paid by the Authority.  Greene

16  contended that the invoices were protected by the

17  attorney-client privilege and that the district court should

18  have conducted an in camera review of the invoices.  Id. at

19  684.  The Third Circuit held that there was no abuse of

20  discretion in the district court not conducting such in

21  camera review and affirmed the district court's holding.  The

22  Third Circuit noted that "a district court has broad

23  discretion in fashioning a process that enables a fair

24  adjudication of the challenge to a subpoena while maintaining

25  control of its docket and making efficient use of its scarce

1  resources." Id. at 684-85.  Given the thousands of entries

2  at stake in the Greene case, the Third Circuit held that the

3  district court had no duty to conduct a "laborious in camera

4  review" because there were many other methods the court could

5  use to resolve the dispute.  Id. at 685.

6          In this case, the Court is satisfied that an in

7  camera inspection of all documents is neither necessary nor

8  appropriate.  Using many of the documents that Cognizant

9  submitted in camera as part of this dispute, and with the

10  benefit of Judge McNulty's extensive rulings and the parties'

11  submissions, the Court can fairly resolve nearly all of the

12  disputes raised in the Defendants' application.  In those

13  instances that require an in camera inspection, the Court has

14  noted as much and has provided a schedule for both the in

15  camera inspection and a further opportunity for the parties

16  to be heard.

17                    **Category One**

18          The first category of documents in dispute concerns

19  those for which Defendants assert privilege has never

20  attached.  At the outset, the Court notes that although the

21  Defendants argue that the relief they seek in this

22  application is necessary to enforce Judge McNulty's rulings

23  concerning Cognizant's waiver of privilege, see, e.g.,

24  Defendants' Moving Brief at 17, the Defendants themselves

25  tacitly admit that this first category is outside that scope.

1    See id. ("First, and before addressing the issues of waiver,

2    the Court should address Cognizant's claims of privilege that

3    are not, and have never been, privileged.").

4         In any event, the Defendants assert that Cognizant

5    has refused to produce a number of documents that have never

6    been privileged.  This category includes communications that

7    do not involve lawyers, for which there are approximately

8    1,375 entries on Cognizant's privilege log.  One such example

9    that Defendants cite is an April 29, 2016, email from

10   Srimanikandan Ramamoorthy to Gordon Coburn that also copies

11   Sridhar Thiruvengadam.  Neither Mr. Ramamoorthy nor

12   Mr. Coburn nor Mr. Thiruvengadam is a lawyer.  The email

13   forwarded a text message that Mr. Ramamoorthy stated he had

14   received on his personal cell phone.  Cognizant refuses to

15   produce the document, claiming that it is

16   attorney-client-privileged because it involves the exchange

17   of legal advice on a non-FCPA compliance issue.

18        Defendants protest that there are no lawyers

19   included in the email and nothing about the subject line of

20   the communication, which merely involves forwarding a text

21   message received on a personal mobile cell phone, suggests

22   the purpose of the communication was to solicit or receive

23   legal advice.

24        This category of documents also includes

25   communications that involve lawyers but, Defendants contend,

1   those lawyers either held non-legal roles in Cognizant or

2   were acting in non-legal capacities.  In this subcategory, by

3   way of example, Defendants recite an email exchange

4   concerning requests from PricewaterhouseCoopers from

5   January 28, 2015, to February 23, 2015, for documentation

6   that Cognizant employees had received and complied with

7   Cognizant's codes of conduct.

8          The email exchange includes PricewaterhouseCoopers'

9   ("PwC") request for documentation that thirty Cognizant

10  employees had received and confirmed compliance with the

11  codes of conduct, which communication is unredacted.  It also

12  includes a response from Cognizant's assistant vice president

13  for compliance (Misty Pederson) providing the documentation.

14  This communication too is unredacted.  It also includes a

15  communication in which PricewaterhouseCoopers forwards the

16  documentation to Nael Qasem, Cognizant's associate director

17  for internal audit.  Qasem then forwarded that material to

18  Cognizant's compliance manager and copies various people,

19  including the PwC auditor.  Lakshmi Vipin, Cognizant's

20  compliance manager, then replied to that email.  The latter

21  communications, specifically PwC forwarding the documentation

22  to Qasem and Qasem forwarding the documentation to Vipin, as

23  well as Vipin's response, are redacted.  Defendants protest

24  that the unredacted portion gives no indication that these

25  communications involve the solicitation or provision of legal

1  advice.  Instead, they contend that it mostly appears that

2  Qasem was trying to get Vipin's help in procuring the

3  compliance documentation.

4          Defendants also point to an email exchange between

5  Defendant Schwartz and others, dated February 23, 2015, to

6  February 24, 2015, concerning "CKC space for CS" -- i.e.,

7  space within the KITS facility.  In the first email,

8  Ramamoorthy communicated with Henry Shiembob, Cognizant's

9  vice president and chief security officer.  Ramamoorthy told

10 Shiembob that space should be available for the corporate

11 security team by June.  In the second email, which is

12 redacted, Shiembob replied to the full thread.  In the third

13 email, which is also redacted, Shiembob replied only to

14 Defendant Schwartz.  And in the fourth email within the

15 thread, which also is redacted, Defendant Schwartz responded

16 to Shiembob.

17         For this email exchange, the Defendants contend

18 that if, as it appears, the parties to the email exchange

19 discussed merely finding space for corporate security, it

20 should not matter that Steven Schwartz is a lawyer because in

21 that instance, Steven Schwartz was not acting there as a

22 lawyer in the sense of giving legal advice.

23         Still another subcategory within Category 1 are

24 communications where the lawyer was merely copied but was

25 neither the sender nor a principal recipient.  As an example,

1   the Defendants point to January 6, 2014, communications

2   regarding "KITS -- Planning Permit Request Letter Reg."

3   Lawyers are merely copied on the those January 6, 2014

4   communications, and are not the senders or principal

5   recipients.  Defendants contend that merely copying a lawyer

6   on an email does not constitute the sort of active

7   participation in providing legal advice that is necessary to

8   give rise to the attorney-client privilege.  See, e.g.,

9   Dejewski v. National Beverage Corporation, 2021 WL 118929, at

10  *1 (D.N.J. January 12, 2021) ("An email is not deemed to be

11  privileged if an in-house attorney ... did not actively

12  participate in providing legal advice as part of that

13  email.... 'Merely cc'ing an email to an attorney is clearly

14  insufficient to establish the privilege.'") (Internal

15  citation omitted.)  Further, the Defendants argue that if

16  some other part of that email thread includes legal advice or

17  references such legal advice, the redaction should be limited

18  to that portion, and the remainder should be produced.

19  Defendants continue that Cognizant cannot simply withhold

20  communications in their entirety, nor took an active role in

21  the communications.

22          The final subcategory within Category 1 are

23  communications where some third party, often Larson & Toubro

24  Construction ("LT"), was the sender, the recipient, or was

25  copied.  As an example, the Defendants recite two June 30,

1  2015, email communications that were sent to L&T employees

2  and that copied other L&T employees.  Cognizant withheld

3  those communications on the basis that the communications

4  involved legal advice on "permit/license issue" or

5  "contract/agreement issue."

6          Cognizant contends that Defendants have had years

7  to raise this issue.  This argument is not without some

8  appeal.  After all, the Government produced the Voluntary

9  Productions Log and the DOJ Subpoena Log (i.e., the privilege

10  logs that Cognizant served on the Government when providing

11  documents) to the Defendants in June 2019.  Further,

12  Cognizant produced documents responsive to the Category A

13  subpoena in 2021 and provided the Category A Log to the

14  Defendants in March 2021 and April 2021.  Defendants did not

15  raise the issue then.  Further, Defendants did not raise the

16  issue reasonably soon after Cognizant supplemented its

17  production to comply with Judge McNulty's rulings in 2022,

18  and timely updated its privilege log.  Further, Cognizant

19  produced documents responsive to the Category B subpoena and

20  Category B Log by September 2022.

21          The attorney-client privilege, and for that matter,

22  the work product doctrine, can apply where a lawyer is

23  neither a sender nor a recipient.  For example, it is well

24  established that within a corporation, communications between

25  nonlawyer employees or officers that relay information,

advice, or instructions from attorneys, such as to implement the advice or instructions of counsel, may be privileged.  In fact, federal courts have long recognized that corporate clients may require the assistance of nonattorneys to gather factual information necessary for the provision of legal advice and representation, and to execute the legal advice once it has been conveyed to the company.  See, e.g., Upjohn Company v. United States, 449 U.S. 383, 394 (1981) (holding that the attorney-client privilege extends to communications by a corporation's employees to legal counsel, at the behest of the corporate superior, where the communication was to secure legal advice from counsel); Westinghouse Electric Company v. Republic of Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991) ("When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege.").

Further, the Supreme Court has recognized that in the corporate context, employees other than executives and counsel may have relevant information to assist in the application or formulation of legal advice.  For example, the Upjohn court stated, "Middle-level -- and, indeed, lower-level -- employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees

1 would have the relevant information needed by corporate

2 counsel if he is adequately to advise the client with respect

3 to such actual or potential difficulties." Upjohn, 449 U.S.

4 at 391.  Other federal courts have similarly found that the

5 attorney-client privilege extends to communications by

6 corporate employees where needed to formulate or effectuate

7 legal advice.  See, e.g., Faloney v. Wachovia Bank, 254

8 F.R.D. 204, 211-12 (E.D. Pa. 2008) (finding that the

9 attorney-client privilege applied to communications by bank

10 officials in providing facts to bank's in-house counsel);

11 Littlejohn v. Vivint Solar, 2018 WL 6700673 at *2 (D.N.J.

12 Dec. 20, 2018) (noting the communications between

13 non-attorney employees may still be privileged if they

14 "assist the attorney to formulate and render legal advice");

15 Cuno Inc. v. Pall Corp., 121 F.R.D. 198 (E.D.N.Y. 1988) (and

16 reasoning that the attorney-client privilege extended to

17 communications, including those of corporate employees

18 "acting at the direction of their corporate superiors, who

19 communicate to counsel that which is needed to supply the

20 basis for legal advice."); Lintz v. American General Finance

21 Inc., 1999 WL 450197, at *11 (D. Kan. June 24, 1999) (finding

22 privileged a note between management and employees containing

23 legal advice from counsel, finding that "management personnel

24 for a corporate defendant may discuss privileged matters

25 without waiving the privilege").  Finally, a corporation may

1  seek to withhold the document based on attorney-client

2  privilege where the document is neither authored nor

3  addressed to an attorney, under certain circumstances.  See,

4  e.g., Santrade v. General Electric Company, 150 F.R.D. 539,

5  545 (E.D.N.C. 1993) (finding that the attorney-client

6  privilege applied where "the document includes communications

7  involving corporate officers and agents who possess the

8  information requested by the attorney or who acted on the

9  legal advice").

10      With that legal framework in mind, the Court has

11  conducted a review of those documents that the parties have

12  specifically identified and provided to the Court.  The Court

13  first addresses Cognizant's Exhibit 8.  Concerning Cognizant

14  Exhibit 8, Defendants challenge privilege because no attorney

15  is included in the top-line email.  Having conducted an in

16  camera examination of Cognizant's Exhibit 8, the Court is

17  satisfied that the document is privileged.  Although the

18  top-line communication does not include an attorney, that

19  communication clearly is just one part of an email chain that

20  conveyed the advice of outside counsel and addressed the

21  implementation of that advice among certain officers of

22  Cognizant.  The top-line email is merely a communication

23  establishing a time to speak about the implementation of the

24  underlying legal advice from counsel.

25      The Defendants also challenge Cognizant Exhibit 9

1   because an attorney is merely copied on that email.  The

2   Defendants argue that merely copying an attorney on an email

3   does not render the communication privileged.  That much is

4   indisputable.  Merely copying an attorney on an email is not

5   by itself a communication made for the purpose of soliciting

6   or providing legal advice.  See In re Riddell Concussion

7   Reduction Litigation, 2016 WL 7108455, at *3 (D.N.J. Dec. 5,

8   2016) ("Thus, the mere fact that Riddell's counsel is copied

9   on emails does not prove a document is privileged....

10  Otherwise, parties could facilely avoid producing relevant

11  discovery by simply copying an attorney on every email.")

12  (internal citations omitted).

13         On the other hand, as the legal framework discussed

14  above illustrates, the mere copying of an attorney, by

15  itself, does not vitiate the privilege, even if the

16  attorney's active involvement in the exchange is not

17  immediately evident.  Instead, the Court must evaluate the

18  purpose and content of the communication.  See Pearlstein v.

19  BlackBerry Ltd., 2019 WL 1259382, at *12 (S.D.N.Y. March 19,

20  2019) (upholding attorney-client privilege despite words

21  being copied on an email, reasoning that the email sought

22  attorney review of a draft script for an investor conference

23  call and included the feedback of counsel).

24         I have conducted an in camera review of Cognizant

25  Exhibit 9.  I am satisfied that the document is privileged.

1   It is true that the specific communications on which

2   Defendants rely do not include counsel.  However, the

3   underlying emails in that email chain clearly involve counsel

4   and make clear that counsel provided legal advice.  This is

5   not a situation where the attorney is merely copied and takes

6   no active role.  Further, the communications on which

7   Defendants rely are further to the implementation of that

8   advice.

9          I have also conducted an in camera review of

10  Cognizant Exhibit 10.  Parenthetically, I would note that

11  some of the documents at issue, specifically DOJ Subpoena Log

12  Entries 1484 to 1485, 1544 to 1545, 2061, and 2063, do, in

13  the main, have an attorney in the "to" or "from" field,

14  specifically Aswin Unnikrishnan, who was senior legal counsel

15  for Cognizant.  Specific to Log Entry 1484, which is the same

16  as Cognizant Exhibit 10, I am satisfied, after an in camera

17  review, that it demonstrates that in-house counsel was

18  working in their capacity as an attorney.  I am satisfied

19  that this material is protected by the attorney-client

20  privilege.  The subject matter of the communication clearly

21  involves the solicitation and conveyance of legal advice

22  regarding, in the broadest sense, negotiation of Cognizant's

23  compliance with the terms and conditions for a project.

24  Moreover, this is not a situation where an attorney was

25  merely copied and took no active role.  And although the

email chain also incorporates the corporate communications department, that does not vitiate the privilege because the involvement of the corporation communications department clearly was further to the implementation of counsel's advice.

The Court next turns to the Defendants' assertion that approximately 798 privilege log entries are not valid because the in-house attorneys held "non-legal roles" at Cognizant, in the sense that they were not acting in a legal capacity or providing advice.  At the outset, the Court repeats the well-familiar central tenet of the attorney-client privilege, which is that it must be limited to communications made for the purpose of obtaining legal advice, not business matters or the routine affairs of the corporation.  See, e.g., Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D.N.J. 1990).  Where communications contain both factual and business advice, courts must ascertain whether "the communication is designed to meet problems which can be fairly characterized as predominantly legal."  Id. at 99 (citations omitted).  See also Claude P. Bamberger International Inc. v. Rohm & Haas Co., 1997 WL 33768546, at *2 (D.N.J. August 12, 1997), aff'd 1997 WL 33762249 (D.N.J. December 29, 1997) ("[W]here a communication contains both legal and business advice, the attorney-client privilege will apply only if the primary purpose of the communication was to

1   aid in the provision of the legal advice.").

2           Accordingly, it is well-settled that advice

3   concerning a corporation's business affairs, technical

4   issues, or public relations is not protected by the

5   attorney-client privilege. Dejewski, 2021 WL 118929, at

6   *1-2; JNL Space Management LLC v. Hackensack University

7   Medical Center, 2019 WL 2315390, at *7 (D.N.J. May 31, 2019)

8   (finding that the defendants failed to establish that the

9   attorney-client privilege applied to an attorney's

10  communications because the documents concerned "lease

11  negotiations, terms of rent, the value of the property ...

12  and overall business due diligence[,]" all of which

13  constituted business advice, rather than legal advice);

14  Goldenberg v. Indel Inc., 2012 WL 12906333, at *4 (D.N.J.

15  May 31, 2012) (finding that emails authored by attorney who

16  was both in-house counsel and a trustee of a the

17  corporation's profit-sharing plan were protected by the

18  attorney-client privilege because they were written in "the

19  course of [counsel's] role as an attorney, not in the course

20  of his duties as a Trustee"); Freedman & Gersten, LLP v. Bank

21  of America, 2010 WL 5139874, at *6 (D.N.J. December 8, 2010)

22  (finding that the attorney-client privilege does not

23  automatically attach to internal investigations by an

24  in-house counsel where counsel's participation is solely "to

25  enforce internal policy or conduct an investigation to remedy

the allegations" rather than providing legal advice).  Put

most basically, the analysis may be reduced to whether the

communication would have been made if the client did not need

legal, as opposed to business, services.  See Leonen, 135

F.R.D. at 98 (holding that party claiming privilege "must

demonstrate that the communication would not have been made

but for the client's need for legal advice or services").

　　　　　The Defendants rely in part on Voluntary Privilege

Log Entry 1484 to argue that it does not reflect a request

for, or the provision of, legal advice.  From the face of the

privilege log, I can understand the Defendants' concerns

about whether the communication involved the conveyance of

legal advice.  However, I have reviewed Exhibit 11 in camera,

and I am satisfied that it is protected by the

attorney-client.  In the broadest terms, the email chain

involves measures that officers and employees of Cognizant

were undertaking to comply with the advice of counsel, and

the coordination of those employees' efforts in order to meet

certain deadlines.  Therefore, the communications squarely

fall within that body of case law recognizing that

non-attorney communications in furtherance of "the direction

of counsel," remain protected by the attorney-client

privilege.  Littlejohn, 2018 WL 6705673, at *2; SCM Corp. v.

Xerox Corp., 70 F.R.D. 508, 518 (D. Conn. 1976).

　　　　　The Court next addresses that subcategory wherein

1  the Defendants argue that certain communications on the

2  privilege log cannot be privileged because they involved a

3  third party.  This accounts for approximately twenty-five

4  entries.  The Defendants argue that by including third

5  parties such as L&T employees in the communication, Cognizant

6  has waived the privilege.  Cognizant responds that the

7  documents fall into four categories.  Those are as follows:

8          1. Two documents that were already produced to the

9          defendants.  Therefore, the Court need not take any

10         further action at this time.

11         2. Twenty documents that are attachments to other

12         emails, which themselves are privileged.  Cognizant

13         reasons that because the parent emails are internal

14         to Cognizant and reflect legal advice from

15         Cognizant attorneys, so too the attachments must be

16         privileged because they are a part of the parent

17         emails.  As to these twenty documents that are

18         attachments, the Court disagrees with Cognizant and

19         agrees with the Defendants.  It might be

20         appropriate to withhold the parent emails as

21         privileged, assuming that they do, in fact, involve

22         the solicitation or provision of legal advice.  But

23         Cognizant, as the party invoking privilege, fails

24         to explain how the attachments and communications

25         themselves are privileged if those attachments

1    included third parties, particularly L&T (the

2    company that allegedly was a conduit for the bribe

3    payments charged in the Indictment and was to be

4    reimbursed for it.)  Cognizant's conclusory

5    statement provides neither a factual justification

6    for invoking privilege, nor a legal basis.  As

7    such, Cognizant falls well short of carrying its

8    burden as the party invoking privilege.  See Torres

9    v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996)

10   (burden is on the party invoking privilege).

11   Accordingly, Cognizant should be required to

12   produce the attachments to the Defendants.

13   3. Two entries that are attachments to a parent

14   email chain regarding a letter of agreement between

15   Cognizant and L&T regarding the SEZ Hyderabad and

16   Pune facilities.  These are Voluntary Log Entries

17   2126 and 2129.  Cognizant asserts that it and L&T

18   (as its contractor) had a common interest in

19   submissions to the Indian authorities concerning

20   the project.  Cognizant secondarily argues that the

21   documents concern the SEZ/Hyderabad and Pune

22   projects and are therefore irrelevant.  For this

23   argument, Cognizant relies on Judge McNulty's

24   January 24, 2022, Opinion, D.E. 263, at page 25.

25   There, Judge McNulty quashed that part of

1              Defendants' subpoena seeking materials related to

2              Cognizant's facilities outside the KITS project

3              such as in "Pune, Siruseri, and elsewhere."

4         The Court both disagrees and agrees with Cognizant.

5    First, to the extent Cognizant suggests that the common

6    interest doctrine shields Log Entries 2126 and 2129 from

7    production, I respectfully disagree.  Under the common

8    interest doctrine, "although an attorney actually represents

9    only one party, there is no waiver of the attorney-client

10   privilege by disclosure of privileged communications to third

11   parties with 'community of interest.'"  Pittston v. Allianz

12   Insurance Company, 143 F.R.D. 66, 69 (D.N.J. 1992).  Parties

13   have a "community of interest" where they "have an identical

14   legal interest with respect to the subject matter of a

15   communication between an attorney and client concerning legal

16   advice.... The key consideration is that the nature of

17   interest be identical, not similar, and be legal, not solely

18   commercial."  Id. (citing Duplan Corp. v. Deering Milliken

19   Inc., 397 F. Supp. 1146, 1172 (S.D.S.C. 1974); In re Diet

20   Drug Prods. Liab. Litig., 2001 U.S. Dist. LEXIS 5494, at *14

21   (E.D. Pa. Apr. 19, 2001) (stating that the doctrine preserves

22   a privilege where persons of companies "share a common legal

23   interest in a legal issue or exchange privileged

24   communications with one another").  For the doctrine to

25   apply, the parties must have an "identical legal interest

1   with respect to the subject matter of the communication...."

2   Id.  Thus, "parties with shared interest in actual or

3   potential litigation against a common adversary may share

4   privileged information without waiving their right to assert

5   the privilege."  Thompson v. Glenmede Trust Company, 1995

6   U.S. Dist. LEXIS 18780, at *15 (E.D. Pa. December 18, 1995).

7   A core premise for the common interest privilege is that the

8   underlying communication itself must be privileged.  Grider

9   v. Keystone Health Plan Cent., Inc., 2005 U.S. Dist. LEXIS

10  44069, at *20 (M.D. Pa. July 28, 2005).  In fact, parties

11  must have "an identical and not solely commercial interest,"

12  and the communication must be designed to further that shared

13  legal interest.  See In re Regents of Univ. of California,

14  101 F.3d 1386, at 1390; Katz v. AT & T Corp., 191 F.R.D. 433,

15  438 (E.D. Pa. 2000).

16          In this case, Cognizant has not carried its burden

17  to establish that the underlying communication was privileged

18  as to each of Cognizant and L&T.  But even if it were,

19  Cognizant has not set forth any factual basis to establish

20  that Cognizant's and L&T's legal interests were identical.

21  It may be that Cognizant and L&T had a shared interest in the

22  Indian authorities' consideration of the project, but those

23  interests were not identical and diverged at some point.  The

24  case law cited above makes clear that the common interest

25  privilege requires the interest to be identical.

Case 2:19-cr-00120-KM   Document 511   Filed 08/18/23   Page 25 of 83 PageID: 26978

|Recorded Opinion
|19-cr-120, August 9, 2023                                                        25
|TEMPORARILY SEALED (available for parties; NOT available for the public)

1          More persuasive, however, is Cognizant's argument

2     that the materials concern projects outside the scope of

3     disclosure that Judge McNulty allowed.  Judge McNulty's

4     January 24, 2022, Opinion provides the basis for the Court's

5     conclusion on this subcategory.  Even as the January 24,

6     2022, Opinion afforded a "broad interpretation" to "concepts

7     of relevance [and] admissibility" under Federal Rule of

8     Criminal Procedure 17, see January 24, 2022, Opinion at 24,

9     it rejected Category B subpoena requests "that would mire the

10    case in a complex reconstruction of the design and financing

11    of complex construction projects.... I have likewise rejected

12    those requests that appear to be aimed at ancillary matters,

13    comparable situations, general suspicions of misconduct, and

14    the like."  Id.  For example, although Judge McNulty allowed

15    Request 3 to proceed as to the KITS project, His Honor

16    quashed Request 3 to the extent it sought information

17    associated with the Pune and Siruseri facilities.  Id. at 25.

18    Accordingly, Cognizant is not required to furnish those

19    materials to the Defendants.

20          There is a caveat, however, concerning the Pune

21    facility in light of the Government's recently filed motion

22    in limine and Judge McNulty's August 2, 2023 Order [D.E.

23    498].  The Court addresses that below.

24          **Category Two**

25          The Court next turns to the second category of

documents.  For this category, Defendants assert that Cognizant has waived privilege, given the breadth of its disclosures to the Government.

The Defendants argue that Judge McNulty's January 24, 2022, Opinion found that Cognizant waived the privilege as follows:

> 1.  If Cognizant produced notes or interview summaries to the Government (whether oral or written), those notes and interview summaries were no longer privileged.
> 2.  If such a summary conveyed the contents of underlying communications or documents, the underlying communications or documents themselves were no longer privileged.
> 3.  Judge McNulty also found that the waiver extended to documents and communications that were "reviewed and formed" any part of Cognizant's presentation to the Department of Justice.

The Defendants acknowledge that Cognizant has produced documents for the first and second categories, specifically the interview summaries and notes that Cognizant produced to the Government, as well as any underlying documents or communications the substance of which Cognizant

1   conveyed in providing a summary to the Department of Justice.

2          However, the Defendants complain that Cognizant has

3   produced precious little as to the third category -- i.e.,

4   any documents or communications that Cognizant reviewed and

5   which formed part of their presentation to the Department of

6   Justice.  The Defendants assert that there must be more

7   documents to be produced in this third category because

8   Cognizant prepared extensively for Government briefings,

9   including the preparation of subject matter briefings;

10  investigation updates, interview readouts, a May 10, 2018,

11  presentation titled "<u>Filip</u> factors & FCPA Corporate

12  Enforcement Policy," as well as talking points and hot

13  document binders for meetings with DOJ.  The Defendants

14  reason that the preparation of these materials must have

15  required review of a broader universe of documents and

16  communications than what Cognizant actually presented in the

17  meetings.

18         For example, Defendants contend that the talking

19  points memorandum prepared by DLA Piper, the outside counsel

20  that conducted the internal investigation and interfaced with

21  DOJ on behalf of Cognizant, stated that DLA produced more

22  than 100,000 pages of material.  Further, the talking points

23  memorandum stated that DLA produced those 100,000+ documents

24  not merely as a "data dump," but in such a way as to distill

25  "key findings" and "important documents."  Therefore, the

1  Defendants reason that the DLA talking points demonstrate

2  that Cognizant's presentations were specific and tied to

3  DLA's document review.

4          Defendants also rely on a June 22, 2017, talking

5  points memo that answered specific questions by the

6  Government such as whether Cognizant's chief executive

7  officer knew about delays at CKC.  On that question, DLA

8  answered, "we reviewed our interview memoranda and conducted

9  numerous targeted searches in response to this question and

10  found no evidence to suggest that Frank knew about the delays

11  at CKC."

12          Another example that the Defendants cite is a

13  May 1, 2018, talking points memo that provided "Summary

14  Findings" from the DLA investigation regarding the "CKC

15  planning permit," "CKC electricity connection," and "CVC

16  environmental clearance."

17          Defendants also rely on an October 10, 2017,

18  talking points memo regarding "the planning permit process in

19  Chennai" and "the environmental clearance process in Pune,"

20  which included a binder and chronology of documents regarding

21  KITS variations.

22          Based on these examples, the Defendants argue that

23  the DLA presentations describe for the Government both

24  certain pieces of evidence and what the evidence cumulatively

25  did and did not show.  The Defendants also assert that the

1    Government relied on DLA's presentation to be comprehensive

2    as to the core topics forming the basis of the Indictment.

3    For example, the Defendants contend that Cognizant provided

4    the Government extensive documents regarding the KITS

5    planning permit, construction variations, and bribe demand.

6    The Defendants argue that the information that Cognizant,

7    through DLA, provided the Government regarding the KITS

8    planning permit, construction variations, and bribe demand

9    included a lengthy list of categories set forth on pages 30

10   through 31 of the Defendant's moving brief.  These materials,

11   which the Defendants presumably already have, included:

12              1.  Srimanikandan Ramamoorthy's statements

13                  regarding the submission of the application for the

14                  planning permit, 2014 KITS site visit, and the

15                  bribe itself;

16              2.  Sridhar Thiruvengadam's descriptions of the

17                  bribe demand, change-order requests received from

18                  L&T, and discussions with L&T regarding the bribe;

19              3.  Board member Lakshmi Narayanan's descriptions

20                  of the permitting process and government orders;

21              4.  A chronology of the bribe demand and KITS

22                  planning permit from approximately March 2014 to

23                  March 13, 2015, which included:  (a) details of a

24                  variation request that L&T sent to Cognizant, and

25                  which included a line item for a statutory

1             approvals/planning permit in the amount of

2             approximately $2.5 million, and (b) Cognizant's

3             India counsel (Deep Baburaaj) seeking clarification

4             on specific statutory approvals and inquiring how

5             L&T intended to make payments to the authorities;

6             5. Statements by Cognizant's Chief Financial

7             Officer, Karen McLoughlin, that she did not recall:

8             (a) L&T pushing back on getting the planning

9             permit, (b) L&T hiring a consultant to obtain the

10             planning permit, (b) Cognizant freezing payments to

11             L&T in 2014, or (d) Cognizant's head of global

12             procurement, Raj Ghosh, discussing with her that a

13             government official had made a demand for payment

14             regarding the planning permit for the KITS

15             facility;

16             6. DLA's explanation of its timeline review for

17             the period of May 13, 2014, to June 30, 2014, in

18             responding to respond to Government questions

19             regarding the progress in the planning permit

20             process.

21             Defendants reason that Cognizant conveyed to the

22 Government such voluminous and detailed information on these

23 subjects, that the amount of material Cognizant reviewed must

24 have been vast. Therefore, Defendants surmise, that review

25 must have included a number of other documents, including:

1      1.  An early 2015 email thread titled "KITS

2      Variation," between various Cognizant employees

3      such as Biswasjit Ghosh (Associate Vice

4      President-Procurement) and P. Ganesh (Associate

5      Vice President of the India Corporate Real Estate

6      Department);

7      2.  Mid-October 2015 emails between Cognizant's

8      in-house counsel and Cognizant employees concerning

9      legal advice from in-house counsel about the

10     process for obtaining the planning permit for the

11     KITS facility;

12     3.  A March 20, 2015, email titled "KITS

13     Variation-Amendment to Construction Contract,"

14     reflecting "legal advice/analysis regarding

15     contract/agreement issue";

16     4.  August 4, 2016, to August 9, 2016, emails

17     between and among Ramamoorthy, Karl Buch, and Dana

18     Gilbert (Cognizant's Chief Compliance Officer),

19     regarding payments to L&T concerning the KITS

20     facility.

21          I will address these materials below.

22          A second category for which the Defendants argue

23  Cognizant provided disclosures to the Government that should

24  warrant the production of additional materials to them in

25  this case concerns subjects such as FCPA policy development

and enforcement, global risk assessments, and corruption

audits.  Here, the Defendants argue that Cognizant provided

the Government with privileged information from its own

investigation regarding the development of its FCPA policies

for global-risk assessments and anti-corruption audits such

as:

> 1.  Defendant Schwartz's statements on how the FCPA
> would apply to different types of payments, FCPA
> red flags, and Cognizant's own anti-corruption
> policy;
> 2.  Defendant Gordon Coburn's statements regarding
> FCPA implications on various payments and other
> employees' adherence to the FCPA;
> 3.  Biswasjit Ghosh's understanding concerning how
> the FCPA would apply to various payments;
> 4.  Other officers' statements regarding the FCPA
> and Cognizant employees' adherence to it; and
> 5.  Descriptions of Cognizant's compliance program
> such as training, risk assessments, internal
> auditing, and investigation.

> However, the Defendants complain, Cognizant refuses

to produce "closely related "materials such as:

> 1.  An August 24, 2015, email from Abraham Verghese
> (Associate Vice Present - Auditing) to Dana Gilbert
> and copying other employees, titled "FW:

1          Discussion on Global Anti-Corruption Report";

2          2.  A March 3, 2016, email from Dana Gilbert to

3          Joelle Quilla (Senior Vice President - Legal

4          Department), regarding "Legal advice to an in-house

5          counsel regarding Cognizant's vendor agreements and

6          attaching draft FCPA policy for the purpose of

7          obtaining legal advice";

8          3.  July 29, 2016, emails from Defendant Schwartz

9          to Dana Gilbert titled "L&T statutory approval

10         support";

11         4.  A September 8, 2016, email from Karl Buch to

12         Joelle Quilla, Dana Gilbert, and others

13         "[a]ttaching a memorandum prepared in anticipation

14         of litigation and reflecting legal advice from

15         outside counsel concerning the FCPA."

16         The Court will also address these items below.

17         A third subcategory concerns Defendants' argument

18  that Cognizant disclosed to the Government documentation

19  regarding other bribe demands that should warrant further

20  production.  According to the Defendants, Cognizant and the

21  Government extensively discussed other instances of bribes

22  allegedly sought and paid at other Cognizant facilities in

23  India.  These discussions included a number of disclosures,

24  such as:

25         1.  Steve Casari's recollection of L&T requests for

Case 2:19-cr-00120-KM  Document 511  Filed 08/18/23  Page 34 of 83 PageID: 26987

|Recorded Opinion
|19-cr-120, August 9, 2023                                                    34
|TEMPORARILY SEALED (available for parties; NOT available for the public)

1          reimbursement of statutory fees at the Hyderabad

2          facility and his recollection of communications

3          with the Pollution Control Board regarding Pune;

4          2.  Dana Gilbert's recollection of a conversation

5          with Defendant Schwartz after Srimanikandan

6          Ramamoorthy raised the issue of power at KITS;

7          3.  Defendant Schwartz's description of his

8          conversation with Ramamoorthy on the power issue

9          and a call with DLA regarding the issue;

10         4.  P. Ganesh's recollection of a construction

11         timeline and permit approvals at Hyderabad and the

12         installation of electricity at KITS, including

13         L&T's engagement and work proposal;

14         5.  Emails shown to Corporate Controller Rob

15         Telesmanic regarding a Pune environmental issue at

16         various times in 2013 and 2014;

17         6.  Ramamoorthy's description of a construction and

18         environmental approval timeline at Pune and payment

19         by L&T to an Indian government official for the

20         permit;

21         7.  Summaries of investigative findings regarding

22         the alleged bribe demand regarding electricity at

23         KITS, including certain findings of the

24         investigation, particularly involving L&T's actions

25         and the assertion that there was no evidence that

1              Cognizant reimbursed L&T for a bribe payment;

2              8.  A chronology of the KITS electricity connection

3              from January 2, 2015, to August 2016 that included

4              a number of details concerning Cognizant's

5              engagement of DLA, and the assertion that payment

6              to L&T was halted such that Cognizant did not

7              reimburse L&T for payments and that negotiations

8              with L&T for the project were suspended pending an

9              investigation by the Audit Committee;

10             9.  Account bills at Hyderabad including particular

11             line items regarding statutory approvals; and

12             10.  Detailed information regarding Cognizant's and

13             DLA's investigation of improper payments to Pune,

14             including information regarding the Pune

15             environmental permitting process.

16             The Defendants complain that despite the breadth of

17      those foregoing disclosures, Cognizant refuses to produce

18      "materials on these very subjects," such as:

19             1.  A June 28, 2013, email from Ramamoorthy to

20             Coburn, Thiruvengadam, and others, titled "FW:

21             Pune CDC environment clearance update";

22             2.  A January 21, 2014, spreadsheet titled "CDC

23             Pune -- statutory summary status -- 2/9/2013"

24             authored by "admin";

25             3.  A June 26, 2015, email from Biswasjit Ghosh to

1          India and APC general counsel Deep Baburaaj copying

2          Ramamoorthy and others, titled "Cognizant KITS and

3          Hyderabad campus," regarding "legal advice/analysis

4          regarding contract/agreement issue";

5          4.  Documents circulated on January 5, 2016, titled

6          "CKC -- letter to TNEB" that reflect "legal

7          advice/analysis regarding permit/license issue";

8          5.  An August 2, 2016, email thread titled "KITS

9          Power" circulated between Steven Schwartz, Gordon

10          Coburn, Ramamoorthy, Dana Gilbert and others;

11          6.  July 10, 2013, emails between Raj Ghosh, as

12          Cognizant's head of global procurement, and

13          Biswasjit Ghosh, the Associate Vice President of

14          procurement, "reflecting legal advice from a

15          request from legal advice from in-house counsel

16          concerning process for obtaining statutory

17          approvals for Cognizant's Adibatla Hyderabad

18          facility."

19          The Defendants argue that these documents should be

20  produced under the third category of waiver that Judge

21  McNulty identified in His Honor's January 24, 2022, ruling --

22  i.e., materials that were reviewed and formed any part of

23  Cognizant's presentation to the Department of Justice.

24          Cognizant principally advances two arguments in

25  opposition to the Defendants' request.  First, to the extent

1   that the Defendants seek in this second category of materials

2   documents and communications from the Category A Privilege

3   Log, the Court should reject those challenges to the

4   privilege assertions as moot.  Cognizant reasons that the

5   Category A documents concerned only the Garrity/Brady

6   motions.  Cognizant argues that Judge McNulty allowed the

7   Category A subpoena to issue solely to allow the Defendants

8   to take discovery for the Garrity/Brady pretrial motions.

9   Indeed, in his September 14, 2020, Opinion, Judge McNulty

10  ruled that "I will grant the issuance of trial subpoenas

11  relevant to the narrow issue of investigative 'outsourcing,'

12  as it relates to a potential pretrial motion for suppression

13  of coerced statements of Coburn and Schwartz."  See

14  September 14, 2020, Opinion, D.E. 96, at 12.  Judge McNulty

15  further defined "relevance" for purposes of the Category A

16  subpoena to mean "relevance to a potential Garrity motion to

17  suppress the coerced statements of Schwartz or Coburn."  Id.

18  at 16.

19          However, Cognizant omits other language from Judge

20  McNulty's opinion.  After defining "relevance," Judge McNulty

21  added:  "[B]ut I will also allow some breathing room for the

22  surrounding context.  I repeat, for clarity, that subpoenas

23  for a broader range of documents may be appropriate in

24  connection with obtaining evidence for defense at trial."

25  Id. at 16.  Therefore, Judge McNulty clearly contemplated a

1   potentially more expansive production from Cognizant to allow

2   the Defendants to prepare for trial.  If, for example, the

3   Defendants intend at trial to formulate a defense that

4   Cognizant scapegoated them as part of part of its cooperation

5   with the Government and to take advantage of the Risha

6   factors, these materials might be as relevant for trial as

7   for the Garrity hearing.  That Judge McNulty contemplated

8   Cognizant producing the documents in response to a different

9   trial subpoena is beside the point, if the documents are

10  pertinent to the defense at trial pursuant to Federal Rule of

11  Civil Procedure 17.  Indeed, Judge McNulty's January 24,

12  2022, Opinion, recognized that the Defendants' Category B

13  subpoena was overly broad.  Nonetheless, the Court allowed

14  "more discovery than is typical" for several reasons.  One

15  such reason was that Cognizant had completed the

16  investigation to exculpate itself, and "to dissuade the

17  Government from pursuing criminal charges against the

18  corporation, and instead focus its attention on the two

19  individuals here."  January 24, 2022, Opinion, D.E. 263, at

20  24-25.  In that it is reasonable to expect that to be a

21  central part of the defense in the criminal case, Cognizant's

22  argument on this score is unpersuasive.

23          Cognizant's second argument, which relies on the

24  scope of waiver set forth in the January 24, 2022 ruling, is

25  more persuasive.  Cognizant argues that the scope of waiver

1   is not nearly as broad as the Defendants contend.  According

2   to Cognizant, the Defendants are speculating that every

3   document remotely related to the subject matter of

4   Cognizant's presentation to the Government is "closely

5   related" so as to form part of the presentation to DOJ.  To

6   rule for the Defendants on this category, Cognizant reasons,

7   would nullify the limitations Judge McNulty carefully crafted

8   in defining the scope of Cognizant's waiver.  Further,

9   Cognizant argues that all the Defendants have done is

10  summarize a broad list of topics discussed during different

11  Cognizant presentations to the Government and then

12  cross-referenced those topics with privileged documents based

13  on the privilege log descriptions.  But, Cognizant urges,

14  merely because privileged documents might relate to the same

15  general subject matter as a presentation to the Government

16  does not mean that the Cognizant attorneys reviewed and

17  relied on that privileged document in any presentation or

18  summary to the Justice Department.  In fact, Cognizant

19  provides specific examples from the Defendants' moving brief

20  to show that Cognizant did not waive privilege because its

21  attorneys did not review and rely on those documents in their

22  presentations to the Department of Justice.  For example,

23  Cognizant argues, in seeking more documents concerning the

24  "KITS planning permit, construction variations, and the

25  alleged bribe of Indian government officials," the Defendants

1    rely on two October 2015 privileged email threads where

2    Cognizant employees sought and received legal advice from

3    Cognizant's in-house counsel.  For example, in Defense

4    Exhibits 13 and 14, the employees sought legal advice

5    concerning what Cognizant had to submit in its application to

6    the Indian authorities for a planning permit.  Cognizant

7    argues that the Defendants do not connect these privileged

8    documents to any disclosure to the Government and, instead,

9    merely list general descriptions of information that

10   Cognizant did disclose.  However, none of the items that

11   Cognizant disclosed to the Government references these

12   emails, even indirectly.

13            The Court finds Cognizant's second argument

14   regarding the scope of the waiver persuasive.  The Defendants

15   essentially contend that merely discussing a general topic

16   with the Government constitutes a waiver of the privilege as

17   to all materials and communications relating to that general

18   topic.  But that argument misapprehends the scope of the

19   waiver that Judge McNulty found.  It is not nearly so broad.

20            In the January 24, 2022, Opinion, Judge McNulty

21   found that the waiver "extends to documents and

22   communications that were reviewed and formed any part of the

23   basis or presentation, oral or written, to the DOJ in

24   connection with this investigation."  See January 24, 2022,

25   Opinion, D.E. 263, at 14.  A mere overlap of subject matter

1   is insufficient for waiver.  And I cannot speculate that

2   Cognizant waived based merely on the overlap in subject

3   matter.  The Defendants provide no correlation to show that

4   the documents they seek above were "reviewed and formed of a

5   presentation to DOJ."  Instead, Defendants argue that the

6   breadth of Cognizant's disclosures to the Government on

7   certain subjects like those above necessarily compels the

8   conclusion that Cognizant waived privilege as to any material

9   on the same subject, even absent a showing that the material

10  formed part of the presentation to DOJ.  For example,

11  Defendants do not explain how this Court can conclude with

12  any confidence that the October 2015 emails between Cognizant

13  in-house counsel and Cognizant employees regarding legal

14  advice from in-house counsel concerning the process for

15  obtaining the planning permit for the KITS facility formed

16  part of a presentation to the Justice Department.  For that

17  reason as well, the Defendants' argument in their July 19,

18  2023, letter (D.E. 494), that the Government's exhibit list

19  somehow establishes that Cognizant waived privilege for the

20  category "FCPA policy development and enforcement, global

21  risk assessments & corruption audits," is unpersuasive.

22          The Government's exhibit list includes the

23  following:

24          Government Exhibit 22:  Certification of Commitment

25          to Cognizant's Core Values and Standards of

1         Business Conduct, signed by Gordon Coburn on

2         November 4, 2013;

3         Government Exhibit 159:  Certification of

4         commitment to Cognizant's Core Values and Standards

5         of Business Conduct, signed by Gordon Coburn on

6         December 3, 2014;

7         Government Exhibit 170:  Certification of

8         Commitment to Cognizant's Core Values and Standards

9         of Business Conduct, signed by Steven Schwartz on

10        December 26, 2014;

11        Government Exhibit 177:  January 15, 2015, email

12        from Bryan Jenkins to Gordon Coburn, "Annual Report

13        and Proxy Information (Gordon Coburn)," with

14        attachments;

15        Government Exhibit 179:  January 30, 2015, email

16        from Bryan Jenkins to Steven Schwartz, "Re:  FW:

17        Annual Report and Proxy Information (Steven

18        Schwartz)," with attachments.

19        Defendants assert that those exhibits demonstrate

20 that Cognizant's FCPA policy development and enforcement,

21 including global risk assessments and anticorruption audits,

22 will be relevant at trial.  See July 19, 2023, Letter,

23 D.E. 494, at 3.

24        But even if that were true, there is no basis in

25 the record to conclude that Cognizant waived privilege as to

1  the documents it did not produce.  Defendants do not contend,

2  nor is there any evidence to suggest, that Cognizant

3  disclosed such a broad swath of material to the Government,

4  much less during investigation into specific allegations of

5  bribery such as to warrant wholesale, entirely subject

6  matter-based waiver untethered to Cognizant's actual

7  presentations to the Justice Department.  Nothing in the

8  record suggests, much less explains how, Cognizant's

9  presentations to the Government necessarily entailed

10  Cognizant and/or DLA not merely reviewing the materials that

11  the Defense now seeks, but also incorporating those materials

12  into its presentation such that those materials could fairly

13  be said to have been "reviewed and formed any part of the

14  basis of a presentation to DOJ."

15       Defendants' position also calls for me to speculate

16  that the materials are relevant.  Judge McNulty's January 24,

17  2022, Opinion took care to distinguish Rule 17 subpoenas from

18  civil discovery demands and subpoenas, which generally afford

19  parties much broader latitude.  Under Rule 17, however, the

20  requesting party "must show the evidentiary nature of the

21  requested materials with appropriate specificity and do more

22  than speculate about the relevancy of the materials being

23  sought."  January 24, 2022, Opinion, D.E. 263, at 5 (quoting

24  United States v. Onyenso, 2013 WL 5322651 (D.N.J.

25  September 20, 2013)).  And while Judge McNulty, after finding

1  waiver, afforded the Defendants a considerable amount of

2  latitude in response to both the Category A and Category B

3  subpoenas, it remains that he also rejected a number of the

4  Defendants' requests as either outside the scope of waiver or

5  not within the "evidentiary nature" of Rule 17.  For example,

6  in addressing the Category A subpoenas, Judge McNulty found:

7  "Broadly, I find that Cognizant's focus on materials relevant

8  to Cognizant's internal investigation and Defendants'

9  interviews is better tailored to the case law in my prior

10  opinion than Defendants' request for 'documents concerning

11  the investigation broadly or documents concerning Cognizant's

12  inquiry into Defendants' generally.'"  See January 24, 2022,

13  Opinion, D.E. 263, at 16.

14         In that same Opinion, Judge McNulty also stated, in

15  addressing the Category A subpoenas, that it was necessary to

16  limit the scope of Cognizant's document custodians because

17  the Defendants had offered "no more than opinions that these

18  additional custodians would 'naturally' or 'likely' possess"

19  relevant records.  Id. at 19.  Further, in addressing the

20  Category B subpoenas, Judge McNulty stated that "I had

21  granted those requests which appear to be aimed directly at

22  evidence pertinent to the two main issues," those being "(1)

23  Defendants' authorization of Cognizant India to authorize L&T

24  to pay a bribe in an April 2014 video conference call; and

25  (2) Defendants' authorization of Cognizant India to pay L&T

1 | 'manufactured expenses' to reimburse L&T for the bribe."  Id.

2 | at 24.

3 |          Further, Judge McNulty rejected Defendants'

4 | requests to the extent that those "would mire the case in a

5 | complex reconstruction of the design and financing of complex

6 | construction projects, where those that seek broad categories

7 | of documents on the theory that if there is useful material,

8 | it would be found somewhere within those categories.  I have

9 | likewise rejected those requests that appear to be aimed at

10 | ancillary matters or comparable situations, general

11 | suspicions, and the like."  Id.  Therefore, for example, even

12 | as to the KITS project, Judge McNulty refused the Defendants

13 | documents and communications with only tenuous relevance,

14 | such as L&T's general construction practices, L&T's and

15 | Cognizant's use of consultants, and design basis reports for

16 | the KITS facility.  Id. at 26.  Judge McNulty subsequently

17 | denied the Defendants' request to compel Cognizant to

18 | produce, in response to the Category A subpoena, draft press

19 | releases reflecting possible changes or edits between

20 | September 23, 2016, and September 30, 2016, after finding

21 | that the Defendants had not "shown with sufficient

22 | specificity that the changes ... or legal advice about such

23 | changes go to the 'heart' of the investigative outsourcing

24 | inquiry or are necessary for its resolution."  April 17,

25 | 2023, Opinion, D.E. 467, at 4-5.

1          Judge McNulty's rulings on the privilege and
2    relevance issues inform this Court's assessment of the
3    documents that the Defendants seek in this second category.
4    The parameters in those opinions persuade the Court that with
5    a few limited exceptions, even if the Court did find the
6    requests to be within the scope of waiver, they are plainly
7    not relevant.  For example, the Defendants seek mid-October
8    2015 emails between Cognizant in-house counsel and Cognizant
9    employees regarding legal advice from in-house counsel
10   regarding the process for obtaining the planning permit for
11   the KITS facility.  But, as noted above, the January 24,
12   2022, Opinion already denied the Defendants' request for
13   documents concerning the design and financing of complex
14   construction projects as well as documents and communications
15   concerning planning permits and meetings.  Defendants also
16   seek a March 20, 2015, email concerning the KITS
17   variation-amendment to construction contract, but this
18   request is akin to those that Judge McNulty determined had,
19   at best, tenuous relevance and were well outside the "two
20   main issues" underlying the case.  Defendants merely
21   speculate that this material might be relevant, and that it
22   might have been reviewed and formed part of the basis for any
23   presentation to the Department of Justice, absent any
24   specific explanation as to how it would be probative of the
25   issues for trial.

1    The Defendants also seek a broad swath of documents

2    pertaining to Cognizant's FCPA policy, development and

3    enforcement, its global risk assessments, and its corruption

4    audits.  The Court has already addressed the issue of waiver.

5    But beyond that, the January 24, 2022, ruling squarely

6    rejected Defendants' request for documents generally

7    concerning Cognizant's FCPA compliance of anticorruption

8    programs.  It is difficult to understand how the documents

9    that Defendants seek here differ from those requests.

10   Moreover, the Government's inclusion in its exhibit list of a

11   discrete set of documents specific to Defendants does not

12   alter this conclusion.  The Government's exhibit list

13   includes, for example, certifications by Gordon Coburn and

14   Steven Schwartz attesting to their commitment to Cognizant's

15   standards for the conduct of business and core values.  See,

16   e.g., Exhibit 1 to July 19, 2023, letter, D.E. 494-1 at

17   Government Exhibits 22, 159, and 170.  The Government's

18   exhibit list also includes emails forwarding an annual report

19   in 2015 to each Defendant.  Id. at Government Exhibits 177

20   and 179.  But the Defendants do not explain how their conduct

21   certifications and the forwarding of the Cognizant annual

22   report now render relevant the global risk assessments,

23   corruption audits, and FCPA policy developments for Cognizant

24   as a whole.

25       The Defendants also seek a wide array of documents

1   concerning other facilities, particularly Pune, but also

2   Hyderabad, including emails from June 28, 2013; January 21,

3   2014; June 26, 2015; and July 10, 2023.  In their original

4   briefing, the Defendants failed to explain how these

5   documents were relevant to the underlying issues for trial as

6   opposed to the documents concerning the Pune and Siruseri

7   facilities that Judge McNulty already found not sufficiently

8   evidentiary to qualify under Rule 17.  The Court is aware and

9   will discuss below the Government's motion in limine.  At

10  this juncture, and subject to Judge McNulty's ruling on the

11  in limine motion, the Court will deny the Defendants' request

12  to functionally revisit Judge McNulty's ruling as to these

13  documents.

14          There are a few documents that the Defendants seek

15  and that appear to be relevant, despite Cognizant's

16  assertions to the contrary.  Further, the subject matter

17  concerning these particular documents is sufficiently aligned

18  with the allegations of the indictment and Cognizant's

19  disclosures and presentations to the Government, to warrant

20  further scrutiny and consideration on the issue of waiver.

21  Specifically, the Defendants seek an early 2015 email thread

22  regarding the KITS variation between Cognizant employees,

23  including Biswasjit Ghosh and P. Ganesh, titled "KITS

24  Variation," as well as a March 20, 2015, email titled "KITS

25  Variation-Amendment to Construction Contract," reflecting

1  "legal advice/analysis regarding contract/agreement issue."

2  The Court notes that Judge McNulty's January 24, 2022,

3  Opinion at page 25, allowed Requests 3(a) through 3(c), which

4  sought "variation requests and cost estimates associated with

5  the KITS project...." Further, as the Defendants note, the

6  materials that Cognizant disclosed to the Government included

7  information regarding the KITS planning permit and variations

8  as well as the bribe demand.  So to the extent that the early

9  2015 email thread addresses the variation to the KITS

10  construction project, that is sufficiently related to

11  "variation requests and cost estimates associated with the

12  KITS project" as to be relevant under Rule 17 and potentially

13  within the third category of waiver that Judge McNulty found

14  in his January 24, 2022, Opinion.

15         Accordingly, the Court respectfully recommends that

16  the District Court offer Cognizant a choice:  Cognizant may

17  either:  (a) produce the early 2015 email thread and the

18  March 20, 2015, email to the Defendants, or (b) it may file

19  by August 25, 2023, a letter not to exceed five double-spaced

20  pages explaining why those materials are privileged and no

21  waiver applies.  Cognizant shall also submit the emails to

22  the Court for in camera review.  The Defendants may respond

23  by letter not to exceed five double-spaced pages by

24  September 1, 2023.

25         The Defendants also seek emails dated August 4,

1    2016, to August 9, 2016, between and among Ramamoorthy, Dana

2    Gilbert, and Karl Buch regarding payments to L&T for the KITS

3    facility.  Insofar as the Court understands L&T to have been

4    the construction company for the KITS project, it is

5    reasonable to assume Cognizant made payments to L&T for

6    various purposes that have nothing to do with a bribe

7    payment.  However, the inclusion of Mr. Buch on the email

8    thread and that it was transmitted when Cognizant was

9    investigating the allegations and disclosing its

10   investigative results to the Government, persuades the Court

11   that the L&T payments addressed in the email thread may not

12   only be relevant to the indictment, but may be sufficiently

13   aligned with those materials and information conveyed to the

14   Government as to be within the third category of waiver.

15   Therefore, the Court similarly recommends offering Cognizant

16   a choice as to these emails dated August 4, 2016, to

17   August 9, 2016.  The Undersigned respectfully recommends that

18   the District Court allow Cognizant to either:  (a) produce

19   them to the Defense, or, (b) file by August 25, 2023 a letter

20   not to exceed five double-spaced pages explaining why the

21   emails are privileged and no waiver applies, as well as the

22   email thread to the Court for in camera review.  The

23   Defendants then may respond by letter not to exceed five

24   double-spaced pages by September 1, 2023.

25              As I mentioned above, there is an important caveat

|Recorded Opinion
|19-cr-120, August 9, 2023
|TEMPORARILY SEALED (available for parties; NOT available for the public)

 1   to the materials that Defendants seek regarding the Pune

 2   facility.  The Court has reviewed Defendants' July 19, 2023,

 3   letter; Cognizant's July 24, 2023, response; Defendants'

 4   July 31, 2023, letter; and Judge McNulty's August 2, 2023,

 5   Order (D.E. 494, 496, and 498).  The Court is aware that on

 6   August 3, 2023, the Government moved in limine to admit

 7   evidence concerning an alleged bribe payment and

 8   reimbursement of that bribe payment regarding the Cognizant

 9   facility in Pune, India, in 2013.  See, e.g., Government

10   Omnibus Brief in Support of Motions in Limine, D.E. 501, at

11   18-19.  The Government seeks to admit testimony that in 2013,

12   L&T paid approximately $600,000 in bribe money to obtain

13   environmental clearances for the Pune project, and Cognizant

14   agreed to reimburse L&T for the bribe money.  Id. at 19.

15   Further, the Government expects the witness will testify

16   about an April 2014 call with the Defendants concerning the

17   $2 million bribe, during which the witness informed the

18   Defendants of the Pune bribe.  The Government also seeks to

19   introduce Defendant Schwartz's contemporaneous notes of the

20   conversation to corroborate that witness's testimony.  Id.

21   The Government argues that the evidence concerning the Pune

22   bribe is intrinsic to the charged offenses and in any event

23   is separately admissible under Federal Rule of

24   Evidence 404(b).  Id. at 2-27.

25           In view of the Government's motion, Defendants have

1 asked the Court in both the July 19, 2023, and August 2,

2 2023, letters to reconsider the ruling concerning Cognizant's

3 motion to quash Defendants' requests for motion and materials

4 concerning the Pune facility.  Essentially, Defendants ask

5 the District Court to reinstate their Category B subpoena to

6 the extent it sought information concerning the Pune facility

7 and the alleged payment of approximately $700,000 in or

8 around 2013 to expedite the environmental clearances.

9        On August 2, 2023, Judge McNulty ordered that "the

10 requests will be handled, if necessary, in connection with

11 the anticipated motion in limine by the Government."  Order,

12 August 2, 2023, D.E. 498, at 2.  Therefore, to the extent the

13 Defendants seek these materials from the Undersigned, as part

14 of their original motion pursuant to the May 18, 2023, Order,

15 the Court recommends that the District Court deny the

16 application, but subject to further action by the District

17 Court after it has adjudicated the Government's in limine

18 motion regarding the alleged Pune facility bribe.

19        **Category Three**

20        The Court now turns to the third category of

21 documents, which may loosely be described as documents

22 concerning the Defendants' support for Cognizant's internal

23 investigation.  For this category, the Defendants argue that

24 the <u>Garrity</u>/<u>Brady</u> hearing on April 18, 2023, and April 19,

25 2023, revealed that Cognizant produced to the Government

1   privileged documents purporting to show the Defendants

2   pushing for the internal investigation to be completed more

3   quickly and questioning why it had not yet been completed.

4   For example, Cognizant produced to the Government documents

5   and communications such as Defense Exhibit 16.  Defense

6   Exhibit 16 is a series of emails dated in early June 2016

7   that included Steven Schwartz, Dana Gilbert, Karl Buch, and

8   others.  The emails suggest that Defendants Coburn and

9   Schwartz were pushing for DLA to complete the internal

10  investigation by the end of June 2016.

11          Defendants also rely on Defense Exhibit 17.

12  Defendant Exhibit 17 is a series of emails that overlaps, to

13  some extent, with those in Defense Exhibit 16 except that

14  Defense Exhibit 17 includes a June 7, 2016, email from Steven

15  Schwartz to Dana Gilbert and other Cognizant staff.  In that

16  June 7, 2016 email, Schwartz confusion that the internal

17  investigation could not be completed by the end of June 2016.

18          Finally, Defendants rely on Defense Exhibit 18.

19  Defense Exhibit 18 is a series of emails that Steven Schwartz

20  sent on June 9, 2016, between 8:06 A.M. and 8:56 A.M. to Dana

21  Gilbert and Henry Shiembob.  In addition to making clear that

22  he wanted the internal investigation completed by the end of

23  June, Steven Schwartz stated in part that "I have not heard

24  anything today that leads me to believe that we have any

25  solid evidence of wrongdoing.  Again, my question is what is

1    going on here?!"

2          Mr. Schwartz also stated that he had "no faith in

3    our advisors at this point," and "I keep hearing that there

4    are violations, but when I press on them, I hear we do not

5    know yet.  These guys are speaking out of both sides of their

6    mouths."

7          The Defendants argue that Cognizant, even as it

8    produced the foregoing materials to the Government, withheld

9    "closely related" documents showing that the Defendants

10   assisted with the internal investigation and encouraged

11   others to do so.  According to the Defendants, this disparity

12   in production, coupled with the testimony of Karl Buch at the

13   Garrity/Brady hearing establishes that Cognizant has

14   inconsistently applied the attorney-client privilege.

15         At the Garrity/Brady hearing, Mr. Buch testified

16   that documents showing the Defendants assisting in the

17   investigation were privileged because during that period,

18   Defendant Schwartz was participating in the internal

19   investigation as a member of the investigative team.

20   Accordingly, Defendants reason, Mr. Buch testified that

21   Cognizant did not report to the Government the steps that

22   Schwartz took to ask witnesses to cooperate with the

23   investigation, and therefore Cognizant has withheld

24   exculpatory documents showing that both Defendants directed

25   others to assist in the investigation, such as by referring

Case 2:19-cr-00120-KM   Document 511   Filed 08/18/23   Page 55 of 83 PageID: 27008

1  them directly to DLA.

2          It is helpful here to consider Mr. Buch's specific

3  testimony.  During the hearing on April 19, 2023, Mr. Buch

4  testified that Cognizant informed the Government that

5  Mr. Schwartz "had previously declined to participate in

6  illegal payment in relation to the Provident fund."  See

7  Transcript of April 19, 2023, Hearing, Defendants'

8  Exhibit 25, D.E. 486-26, at 368:3 to 368:6.  Mr. Buch also

9  testified as follows:

10          Q:  Did you ever provide to the Government

11              exculpatory evidence regarding steps that

12              Mr. Schwartz took to assist in the internal

13              investigation that was going on?

14          A:  I think we took the position that, to the

15              extent that Mr. Schwartz was participating in the

16              internal investigation as a member of the

17              investigative team, that his activities were

18              privileged.  And we did not report the steps that

19              Mr. Schwartz took to ask witnesses to cooperate

20              with the investigation to the Government.

21          Q:  But you were aware of those steps?

22          A:  I am.

23  Id. at 369:6 to 369:16.

24          The Defendants therefore argue that Cognizant's

25  withholding of documents and communications showing the

1  Defendants assisting with and supporting the internal

2  investigation constitutes selective waiver because Cognizant

3  disclosed privileged documents that cast the Defendants in an

4  unfavorable light, while withholding documents showing the

5  opposite.  They further argue that Cognizant's production to

6  the Government of only the inculpatory communications is

7  exactly the sort of waiver that Judge McNulty contemplated in

8  his January 24, 2022, waiver ruling.

9        Parenthetically, the dispute before the Court

10  actually raises issues of both selective waiver and partial

11  waiver.  The Third Circuit explained the distinction in

12  Westinghouse Electric Corp. v. Republic of Philippines, 951

13  F.2d 1414 (3d Cir. 1991):

14          Selective waiver permits a client
            who has disclosed privileged
15          communications to one party to
            continue asserting the privilege
16          against other parties.  Partial
            waiver permits a client who has
17          disclosed a portion of privileged
            communications to continue
18          asserting the privilege as to the
            remaining portions of the same
19          examinations.

20  Id. at 1423 n.7.

21        The Third Circuit further explained:

22          When a party discloses a portion
            of otherwise privileged materials
23          while withholding the rest, the
            privilege is waived only as to
24          those communications actually
            disclosed unless a partial waiver
25          would be unfair to the party's
            adversary.  If partial waiver does

1              disadvantage the disclosing
               party's adversary by, for example,
2              allowing the disclosing party to
               present a one-sided story to the
3              Court, the privilege would be
               waived as to all communications on
4              the same subject.

5    Id. at 1426 n.12.

6          Of course, the Third Circuit in Westinghouse

7    unambiguously rejected the selective waiver rule.  It did not

8    consider the partial waiver rule, as that case "involve[d]

9    selective, rather than partial, disclosure."  Id. at 1426.

10         Defendants provide examples of documents that, they

11   say, establish their assistance with the internal

12   investigation and encouragement of others to cooperate with

13   it.  Defendants emphasize that they have these documents only

14   because Schwartz possessed some of them independently of

15   Cognizant's production."  Defense Moving Brief, D.E. 487, at

16   40.  One such example is Defendants' Exhibits 19-20.  These

17   consist of a July 2016 email chain concerning updating the

18   Audit Committee.  Exhibit 19 is the redacted version that

19   Cognizant produced to the Government, while Exhibit 20 is an

20   unredacted version that Schwartz acquired on his own.  The

21   copy that Cognizant produced to the Government shows only the

22   sender, recipients, date, and subject line, which states,

23   "Re:  Audit Committee Meeting."  The unredacted copy that

24   Defendant Schwartz procured on his own, shows that Schwartz

25   suggested to Cognizant's Chief Executive Officer, Francisco

 1  D'Souza, and Coburn that Schwartz and Dana Gilbert update

 2  members of the Audit Committee regarding "the possible FCPA

 3  item," which the Court understands to be a reference to

 4  Cognizant's internal investigation into the alleged bribe

 5  payments.  In that same email chain, Coburn agreed and

 6  suggested that Schwartz and Gilbert also update the full

 7  Audit Committee at its next meeting.  In that same email

 8  chain, Mr. D'Souza and Mr. Schwartz agreed with Mr. Coburn's

 9  suggestion.  Therefore, Cognizant redacted Steven Schwartz's

10  first email that suggested a report to certain Audit

11  Committee members as well as his and Mr. D'Souza's ensuing

12  emails showing D'Souza's agreement with Schwartz's proposal.

13          Another example that the Defendants provide draws

14  from their Exhibits 21 and 22.  These are July 2016 emails

15  wherein Mr. Schwartz ensures that the investigation is

16  progressing.  According to the Defense, Cognizant withheld

17  these emails and did not log them.  But, Defendants maintain,

18  the emails are important because they show efforts by

19  Mr. Schwartz to confirm that the investigation was being

20  conducted properly and was progressing.  In the emails, Dana

21  Gilbert sent Steven Schwartz a draft email for him to send to

22  P. Ganesh, the Associate Vice President of the Real Estate

23  Department in India, seeking Ganesh's help in the internal

24  investigation, including collecting documents and records for

25  production to Ernst & Young.  The Defendants contend that

1    Schwartz replied within minutes, showing that he intended to

2    comply without hesitation, and then sent the email to Ganesh,

3    seeking Ganesh's cooperation.

4            I have reviewed Defense Exhibits 21 and 22.  First,

5    with regard to Exhibit 21, it shows that on July 28, 2016, at

6    11:51 P.M., Dana Gilbert sent Steven Schwartz a draft email

7    for him to send to Ganesh.  The draft email references

8    Cognizant's "review" in Chennai, India, and indicates that

9    review was proceeding on a tight timeline.  The email also

10   stated that Ernst & Young was collecting documents from the

11   corporate real estate team and asked Ganesh to arrange

12   support for Ernst & Young's collection efforts.  Three

13   minutes later, Schwartz responded to Dana Gilbert's email.

14   He proposed that the title for the email should be "L&T

15   Statutory Approval Support," and asked if he should send the

16   email as privileged."

17           Defense Exhibit 22 is a subsequent email chain

18   related to the emails in Exhibit 21.  The first email is

19   dated July 29, 2016, 9:37 A.M., and it is from Steven

20   Schwartz to P. Ganesh, with copies to David Mithra and Dana

21   Gilbert.  The subject was "L&T's Statutory Approval Support,"

22   and the substance of the letter repeated to P. Ganesh the

23   same language that Dana Gilbert had proposed to Schwartz in

24   the July 28, 2016, email.  The next email in the chain is P.

25   Ganesh's July 29, 2016, response to Mr. Schwartz, which also

1   copied Dana Gilbert and David Mithra.  In sum, it assured the

2   recipients that Ganesh and his team were fully supporting the

3   Ernst & Young auditors and provided details of their

4   coordination efforts.  The next and final email in Defense

5   Exhibit 22 consists of Mr. Schwartz forwarding Ganesh's

6   response to Dana Gilbert (although Ganesh had already copied

7   her), and asking how to respond to Ganesh's email.

8           As an aside, the timestamp for some emails, such as

9   Steven Schwartz's, appear to be in Eastern Daylight Time.  In

10  fact, Schwartz's emails are often timestamped as such.  Other

11  emails do not appear to be within Eastern Daylight Time.  For

12  example, if all emails senders were within the same time

13  zone, then in Defense Exhibit 22, Ganesh actually would have

14  sent his response to Schwartz before Schwartz sent the

15  original email.  Given that Ganesh was presumably located in

16  India as the Associate Vice President in the India Real

17  Estate Department, the date/time disparity is unsurprising.

18          The Defendants argue that the fact that Schwartz

19  responded immediately to Dana Gilbert and sent an email to

20  Ganesh shows his cooperation with the investigation.  Those

21  cooperation efforts, they aver, provide much different

22  context than the documents that Cognizant produced to the

23  Government.  Therefore, the Defendants argue that Cognizant

24  selectively asserted the privilege, and in doing so, misled

25  the Government and denied both the Government and the Defense

1  access to what otherwise would be exculpatory material.  In

2  fact, the Defendants point the Court to the testimony of

3  David Last at the <u>Garrity</u>/<u>Brady</u> hearing.  When he testified

4  at the Garrity/Brady hearing, Mr. Last was at the Chief of

5  the Foreign Corrupt Practices Act Division at the Department

6  of Justice.  At that hearing, Mr. Last testified he had no

7  reason to believe that Cognizant had withheld any privileged,

8  exculpatory material from the Government.  However, Mr. Last

9  allowed that the Government had no visibility into the

10  parameters of Cognizant's privilege assertions because when

11  the Government asked Cognizant about its privilege

12  parameters, Cognizant claimed that those parameters

13  themselves were privileged.  Further, Mr. Last testified

14  that, if he knew that DLA or Cognizant had <u>Brady</u> material

15  that they did not disclose to the Government, he would not

16  have brought charges.  Therefore, the Court should require

17  Cognizant to search for and produce or submit to the Court

18  for in camera review any documents showing the Defendants

19  assisted in the investigation.

20          Cognizant advances a number of arguments in

21  opposition.  First, Cognizant argues that the Defendants'

22  request for these materials exceeds the scope of this Court's

23  appointment, as set forth in Judge McNulty's May 18, 2023,

24  Order.  Cognizant argues that the May 18th Order was limited

25  to "any disputes as to Cognizant's assertions of privilege

1   with respect to materials listed on Cognizant's privilege

2   logs.  See Cognizant Opposition Brief, D.E. 488, at 23

3   (quoting Order, D.E. 481, at 2).

4           Here, though, Cognizant argues, Defendants seek

5   undefined exculpatory documents that do not relate to a

6   privilege dispute.

7           The Court respectfully disagrees with Cognizant.

8   In his May 18, 2023, Order, Judge McNulty referred to me "any

9   disputes as to Cognizant's assertions of privilege with

10  respect to materials listed on [its] privilege logs."  See

11  May 18, 2023, Order, D.E. 481, at 2.  The first page of the

12  Order makes clear that mandate includes disputes concerning

13  Cognizant's assertions of privilege over materials that the

14  Defendants seek for trial relating to the Cognizant Privilege

15  Log For the DOJ Subpoena, dated November 8, 2018, the

16  Cognizant Privilege Log For Voluntary Document Productions

17  2016-2018, the Cognizant Privilege Log for its production

18  response to Defendants' Category A subpoena, and the

19  Cognizant Privilege Log for its production response to

20  Category B subpoena.  Cognizant has withheld production of

21  the pertinent documents from the Government and Defense, at

22  least based in part, if not wholly, on the basis of

23  privilege.  That much is clear from:  (1) Cognizant's

24  redactions to Defense Exhibit 9 on the basis of privilege;

25  (2) at least one of the emails in Defense Exhibit 20,

Case 2:19-cr-00120-KM   Document 511   Filed 08/18/23   Page 63 of 83 PageID: 27016

|Recorded Opinion
|19-cr-120, August 9, 2023                                                    63
|TEMPORARILY SEALED (available for parties; NOT available for the public)

1   specifically, the July 19, 2016, 1:54 P.M., email from

2   Schwartz to Coburn, Gilbert, and D'Souza regarding the

3   auditors committee meeting, which Cognizant labeled "attorney

4   communication/privilege and confidential"; (3) all of the

5   emails in Defense Exhibit 21 and 22 that claim to be

6   privileged; (4) that Cognizant included at least some of the

7   emails on its privilege log; and (5) the testimony of

8   Mr. Buch, who said that the basis for withholding the

9   communications from the Government was "Mr. Schwartz was

10  participating in the internal investigation as a member of

11  the investigative team, that his activities were privileged,

12  and we did not report the steps that Mr. Schwartz took to ask

13  witnesses to cooperate with the investigation to the

14  Government.  See Transcript of April 29, 2023, hearing;

15  Defense Exhibit 25, D.E. 486-2, at 369:6 to 379:16.

16  Accordingly, Judge McNulty's May 18, 2023, Referral Order

17  plainly encompasses this dispute.

18          Next, the Defendants argue that the Defense request

19  is an attempt to get, in this application, the Brady relief

20  that they unsuccessfully sought before Judge McNulty.

21  Cognizant argues that the Defendants' Garrity/Brady motion

22  sought similar relief and even cited similar examples,

23  specifically Defense Exhibits 19-22.  In fact, the Defense

24  there asked Judge McNulty to compel the Government to "search

25  those files for Brady and Giglio material, and turn over any

1    exculpatory material to the Defense."  Cognizant therefore

2    argues in its July 24, 2023, letter that the denial of the

3    Defendants' Garrity/Brady motions on July 20, 2023, mooted

4    Defenses' contentions as to the Category A subpoena and

5    denied Defendants' request to compel Cognizant to require the

6    Government to search Cognizant's corporate files for Brady

7    material.  See D.E. 496 at 3-4.

8            This argument is unpersuasive.  The Defendants'

9    Garrity/Brady application and the relief they sought therein,

10   are qualitatively different than the relief the Defendants

11   seek here.  In that application, the Defense contended that

12   Cognizant "engaged in a joint effort with the Government to

13   investigate and prosecute Schwartz and Coburn" and that, as a

14   result, "Cognizant's files are deemed to be, and are, in

15   fact, in the Government's constructive possession for

16   constitutional purposes."  See Defendants' Proposed Findings

17   of Fact and Conclusions of Law with Respect to

18   Garrity/Connolly/Brady Motions, D.E. 482, at 93.

19   Accordingly, the Defendants asked the Court to require the

20   Government to search Cognizant's files and produce any

21   exculpatory material to the Defense.  See Findings of Fact,

22   Conclusions of Law, and Order, July 20, 2023, D.E. 495, at 2.

23   (Hereinafter "Garrity/Brady Opinion"); Id. at 18 n.5 ("at

24   issue is the existence, or not, of a further obligation to

25   search Cognizant's files.").

1    At the hearing and in his July 20, 2023, ruling,
2 Judge McNulty observed that a central question in the
3 Garrity/Brady application was "whether the company was so
4 dominated by the Government that they should be regarded as
5 being the Government for purposes of Brady."  See also
6 Garrity/Brady Opinion at 18.  ("The critical inquiry is
7 whether a prosecutor may be deemed to have 'constructive
8 possession' of the evidence, meaning that, 'although a
9 prosecutor has no actual knowledge, he should nevertheless
10 have known that the material at issue was in existence.'")
11 (quoting United States v. Risha, 445 F.3d 298, 303 (3d Cir.
12 2006)).  In fact, Judge McNulty's decision to deny the
13 Defendants' Brady motion was not based on a privilege
14 analysis at all.  Instead, Judge McNulty applied the Risha
15 factors to hold that the Government did not have constructive
16 possession of the documents in Cognizant's files and was not
17 obligated to search those files.  Id. at 19-22.

18    This dispute is squarely one of privilege.  The
19 Defendants assert that Cognizant selectively waived the
20 privilege by disclosing to the Government privileged
21 materials showing that Defendants impeded Cognizant's
22 internal investigation, while withholding from the Government
23 and Defense materials that show them supporting or
24 facilitating the investigation.  A second issue in this
25 privilege analysis is whether, if Cognizant selectively or

1   partially waived the privilege through some disclosures,

2   whether it should be required to produce those documents.

3   And, at the risk of stating the obvious, the relief that the

4   Defendants seek here is that Cognizant produce the documents,

5   rather than compel the Government to search and produce any

6   such documents.

7           Cognizant's third argument is also unavailing.  In

8   this third argument, Cognizant argues that the Defendants'

9   request is too vague and that Defendant Schwartz already

10  possesses the exculpatory materials.  For this argument,

11  Cognizant relies on Exhibits 19 through 22 of the Defendants'

12  brief.  Also as examples, Cognizant points to Exhibits 70,

13  71, 73, and 74 of Schwartz's Garrity/Brady submission, which

14  are also Exhibits 16 through 19 to the declaration of

15  Cognizant counsel Jenny Kramer, Esq.  Cognizant points out

16  that it did not produce those exhibits, so they must have

17  come from Mr. Schwartz himself.  Cognizant also states that

18  it has repeatedly asked Mr. Schwartz to return them, but to

19  no avail.

20          The Court first addresses Cognizant's suggestion

21  that the Defendants already have the relevant documents.  At

22  the outset, the Court notes for the sake of clarity that most

23  of the emails that Cognizant has presented as examples are

24  the same emails that the Defendants already have, but with

25  different exhibit numbers due to the parties' varying

1   submissions.  So, for example, Exhibit 71 to the Schwartz

2   Garrity submission is the same July 19, 2016, email chain as

3   Defense Exhibit 20 and Kramer Declaration Exhibit 17.

4   Similarly, Exhibit 73 to the Schwartz Garrity submission is

5   the same July 28, 2016, email chain at both Defense

6   Exhibit 21 and Kramer Declaration Exhibit 18.  The Schwartz

7   Garrity Exhibit 74 is the same July 29, 2016, email chain as

8   Defense Exhibit 22 and Kramer Declaration Exhibit 19.

9           There is also Exhibit 70 to the Schwartz Garrity

10  submission that is marked as Exhibit 18 to the Kramer

11  declaration.  This is an April 27, 2016, email from Steven

12  Schwartz to Shiembob, Molina, and others, reminding them to

13  keep all information collected as confidential, to preserve

14  all such communications, and to include particular DLA Piper

15  staff on all related communications.

16          Implicit in Cognizant's argument is that these few

17  documents constitute the full universe of exculpatory

18  materials concerning the Defendants' role in the

19  investigation.  But Cognizant does not actually say that.

20  For example, Ms. Kramer's declaration makes no such

21  representation.  So Cognizant's tacit suggestion that "this

22  is all there is" falls flat absent any definitive

23  representation to that effect.  Moreover, the existence of

24  the emails that the Defendants have secured separate from

25  Cognizant's production, coupled with Mr. Buch's testimony at

1   the <u>Garrity</u>/<u>Brady</u> hearing, provide a reasonable basis to

2   allow that there might be additional materials that Cognizant

3   has not produced to the Defense or the Government.

4            So too do the circumstances under which Defendant

5   Schwartz generated the emails that have been provided as

6   examples.  Specifically, the scope of Cognizant's internal

7   investigation, and the extent of Schwartz's involvement in

8   that investigation, allow for the reasonable possibility of

9   additional emails.  First, it is reasonable to expect that a

10  company's chief legal officer would be actively involved in

11  such investigation, both before and after outside counsel got

12  involved.  Presumably, the chief legal officer would be

13  involved in, among other things, assessing the source and

14  basis of the wrongdoing alleged; considering whether to

15  engage outside counsel; consulting with outside counsel

16  concerning the scope of the investigation; identifying the

17  likely sources of relevant documents and communications that

18  outside counsel would need to review, ensuring that outside

19  counsel received such documents; communicating to staff any

20  instructions from outside counsel such as concerning document

21  collection and preservation and ensuring that those

22  instructions are followed; and updating other corporate

23  officers committees and the board of directors about the

24  status of the investigation.  And while the corporation's

25  president likely would be less involved than the chief legal

1 | counsel, it is still reasonable to assume there might at
2 | least be some involvement or communications.

3 |         The exhibits that the parties have put before this
4 | Court illustrate just that.  Specifically, they demonstrate
5 | that the Defendants, and particularly Schwartz, were actively
6 | involved in the investigation from its inception in early
7 | 2016 until approximately August 20, 2016, when Ramamoorthy
8 | was interviewed as part of the investigation and disclosed
9 | that the Defendants had "authorized a $2.5 million payment to
10 | India officials to obtain the planning permit for a Cognizant
11 | facility in Chennai." See Garrity/Brady Opinion at 3.  At
12 | that point, Coburn and Schwartz were removed from the
13 | investigation.  Id.  Therefore, it is not unreasonable to
14 | allow that Cognizant likely possesses additional documents
15 | and communications showing that Schwartz and/or Coburn took
16 | measures to advance, or at least appear to advance, the
17 | investigation for the approximately seven to eight-month
18 | period between the inception of the investigation and their
19 | removal from the investigation.

20 |         Cognizant next contends that Judge McNulty did not
21 | find that its waiver was so broad as to encompass materials
22 | showing that Defendants Coburn and Schwartz assisted in
23 | advancing the investigation.  Relying on Judge McNulty's
24 | January 24, 2022, Opinion, Cognizant points to the fact that
25 | Judge McNulty quashed Request Number 32 of the Category B

1    subpoena.  Category 32 of the B subpoena sought, among

2    numerous other items, "evidence of Mr. Schwartz's long

3    history of ensuring FCPA compliance regarding both the

4    instant allegations and prior bribery allegations to which

5    Mr. Schwartz took specific actions in furtherance of

6    Cognizant's compliance program."  As to Request 32, the

7    Defendants had argued that the information was necessary to

8    demonstrate Defendant Schwartz's long history of FCPA

9    compliance.  But Judge McNulty struck Request Number 32,

10    finding that the request sought broad categories of

11    documents, "with little specificity of how such materials

12    will yield relevant, necessary evidence" on the hope that it

13    might lead to exculpatory evidence.  See January 24, 2022,

14    Opinion, at 27-28.  Therefore, Cognizant reasons that the

15    Defendants should not now be allowed to use this application

16    to revisit Judge McNulty's rulings.

17            This argument is unavailing for several reasons.

18    First, Request Number 32 sought entirely different categories

19    of documents than the materials that the Defendants seek

20    here.  Request Number 32 sought communications between Steven

21    Schwartz and other Cognizant officers and employees

22    concerning ten topics that have little, if anything, to do

23    with the Defendants' cooperation with the internal

24    investigation.  More importantly, Judge McNulty's ruling

25    concerning Request Number 32 was not based on the scope of

1    Cognizant's waiver.  That ruling was squarely grounded on the

2    "evidentiary" standard of Federal Rule of Criminal Procedure

3    Rule 17.  See id.  Judge McNulty concluded that

4    Request Number 32, along with Request Number 33, was overly

5    broad, and unsupported by any specific argument as to how

6    those requests would yield necessary evidence.  Id.

7    Accordingly, Judge McNulty struck Request Number 32 for

8    failing to meet the standards under Rule 17 and United States

9    v. Nixon, 418 U.S. 683, 699-700 (1974), that the materials be

10   "evidentiary, relevant, and necessary for 'Defendants to

11   properly prepare for your trial.'" Id. at 23 (quoting Nixon).

12          The Court is persuaded that Cognizant waived any

13   privilege concerning emails demonstrating that the Defendants

14   assisted in advancing the investigation, including but not

15   limited to the examples that the Defendants have provided as

16   well as the April 27, 2016, email from Schwartz to Shiembob

17   and others, marked as Schwartz Garrity Exhibit 70 and Kramer

18   Declaration Exhibit 16.  This Court is guided by Judge

19   McNulty's January 24, 2022, and April 27, 2023, Opinions

20   concerning the scope of Cognizant's waiver.  In the

21   January 24, 2022, Opinion, Judge McNulty reasoned that "where

22   a partial waiver disadvantages the disclosing party's

23   adversary 'by, for example, allowing the disclosing party to

24   present a one-sided story to the court, the privilege would

25   be waived as to all communications on the same subject.'"

|Recorded Opinion
|19-cr-120, August 9, 2023
|TEMPORARILY SEALED (available for parties; NOT available for the public)

1   January 24, 2022, Opinion at 9 (quoting <u>Westinghouse Electric</u>

2   <u>Corp.</u>, 951 F.2d at 1423-24).

3          In finding that Cognizant's disclosures to the

4   Government effected a "significant" waiver of privilege,

5   Judge McNulty held that "Cognizant's voluntary turnover of

6   materials in revelation of the fruits of its investigation to

7   the DOJ also entailed a waiver of privilege as to

8   communications that 'concern the same subject matter' and

9   'ought, in fairness, be considered together' with the actual

10  disclosures to DOJ." <u>Id.</u> at 13-14 (quoting <u>Shire LLC v.</u>

11  <u>Amneal Pharmaceuticals LLC</u>, 2014 WL 1509238, at *6 (D.N.J.

12  January 10, 2014)).  Accordingly, Judge McNulty defined the

13  scope of Cognizant's waiver based on its disclosures to the

14  Government in the three categories that this Court has

15  already discussed and that are well familiar to the parties.

16  <u>See</u> <u>id.</u> at 14.

17          In his April 17, 2023, Opinion, Judge McNulty drew

18  a distinction that is pertinent here.  First, he denied

19  Defendants' request that Cognizant produce notes and

20  summaries of meetings between Cognizant representatives and

21  the Government.  <u>See</u> April 17, 2023, Opinion, D.E. 467, at 3.

22  Judge McNulty determined that those documents constituted

23  work product, which Cognizant did not waive because it did

24  not produce those materials to the Government.  <u>Id.</u> at 3-4.

25  Judge McNulty allowed that those documents might contain

1   information conveyed to the Government, but found that "they

2   fall within the privilege, are less weighty in relation to

3   the issue of whether the Government ordered or coerced the

4   Defendants' interviews, and likely would duplicate other

5   records or testimony." Id. at 4.  But in delineating the

6   scope of examination of Cognizant's witnesses at the

7   Garrity/Brady hearing, Judge McNulty found that Cognizant's

8   proposed list of topics was too narrow and overlooked that

9   part of his January 24, 2022, ruling that included materials

10  that "concern the same subject matter" and "ought in fairness

11  be considered together" with those disclosures that Cognizant

12  made to the Government.  Id. at 6 (quoting January 24, 2022,

13  Opinion at 14).  Therefore, Judge McNulty allowed the Defense

14  to question the "witnesses about otherwise privileged

15  communications or work product to the extent that such

16  communications or work product were either directly conveyed

17  to the Government or fall into one of the three buckets

18  outlined above." Id. at 7.

19          The communications that Defendants seek here do not

20  fall neatly into one of the three buckets that Judge McNulty

21  delineated in the January 24, 2022, and April 17, 2023,

22  Opinions.  But that is not particularly surprising, because

23  the current dispute chiefly arose at the Garrity/Brady

24  hearing and had not been presented to Judge McNulty.  In that

25  regard, Cognizant's suggestion that Judge McNulty previously

1    considered this issue is puzzling.  See July 24, 2023,

2    Letter, D.E. 496, at 3.  Although Judge McNulty did consider

3    the issue of selective waiver in his January 24, 2022,

4    Opinion, nothing in that decision, or in any other decision

5    by His Honor, suggests that he was called upon to address

6    this particular issue.

7           Cognizant cites page 8 of the January 24, 2022,

8    Opinion.  See July 24, 2023, Letter, at 3.  But that merely

9    provided the standards for waiver.  Cognizant also cites

10   Docket Entry 451 at page 23, Footnote 15.  See id.  But that

11   is a letter brief from Defense counsel complaining that was

12   Cognizant was withholding exculpatory documents.

13          In any event, the current dispute appears to have

14   incepted, or at least crystallized, in the wake of Mr. Buch's

15   testimony that Cognizant did not disclose such communications

16   to the Government and instead took the position that those

17   were privileged.  Mr. Buch's testimony suggested Cognizant

18   would not have summarized any such documents' contents for

19   the Government.  And while it is possible that Cognizant

20   reviewed such documents, the record does not suggest that the

21   communications formed any part of any presentation to DOJ,

22   oral or written.

23          Nevertheless, in both the January 24, 2022, and

24   April 17, 2023, rulings, Judge McNulty clearly allowed that

25   waiver would extend to undisclosed materials that concern the

1  same subject matter as the disclosed materials, and should be

2  considered together as a matter of fairness.  Indeed, in

3  delineating the scope of Cognizant's waiver, Judge McNulty

4  expressly considered Federal Rule of Evidence 502(a).  <u>See</u>

5  January 24, 2022, Opinion, at 8.  Under Rule 502(a), waiver

6  will apply if "the disclosure is made ... to a federal office

7  or agency" just as it would apply in a federal court

8  proceeding.  Rule 502(a) also provides that the waiver will

9  apply if:

10         1.  The waiver is intentional;

11         2.  The disclosed and undisclosed communications

12         are information that concern the same subject

13         matter; and

14         3.  They ought in fairness be considered together.

15         Federal Rule of Evidence 502(a).

16         Judge McNulty noted that waiver occurs "'when the

17  privilege-holder has attempted to use the privilege as both

18  'a sword' and 'a shield' or when the party attacking the

19  privilege will be prejudiced at trial.'"  January 24, 2022,

20  Opinion at 8-9 (quoting <u>Shire LLC v. Amneal Pharma.</u>, 2014 WL

21  1509238, at *6 (D.N.J. Jan. 10, 2014)).  <u>See also</u> <u>Permian</u>

22  <u>Corp. v. United States</u>, 665 F.2d 1214, 1221 (D.C. Cir. 1981)

23  (declining to find privilege against selective waiver and

24  stating that "the client cannot be permitted to pick and

25  choose among his opponents, waiving the privilege for some

1   and resurrecting the claim of confidentiality to obstruct

2   others, to invoke the privilege as to communications whose

3   confidentiality he has already compromised for his own

4   benefit.... The attorney-client privilege is not designed for

5   such tactical employment.").

6         In this case, Cognizant produced to the Government

7   communications that the Government may seek to introduce at

8   trial to show that Defendant Coburn and/or Defendant Schwartz

9   attempted to interfere with, or bring to a premature

10   conclusion, the internal investigation.  See, e.g., Defense

11   Exhibit 16-18.  In fact, the Government's exhibit list, which

12   was not available at the time of the original briefing but

13   which the Defense attached as Exhibit 1 to its July 19, 2023,

14   letter (D.E. 494-1), includes the June 2016 emails marked as

15   Defense Exhibits 16 to 19 that I discussed above.

16   Parenthetically, for purposes of Rule 502(a)(1), there was no

17   dispute that Cognizant's production to the Government was

18   intentional.  It follows, then, that documents and

19   communications wherein Defendant Schwartz and Coburn

20   supported the internal investigation, and encouraged others

21   to do so, constitute the "same subject matter" under

22   Rule 502(a).  In either instance, the material is indicative

23   of Defendants' intentions and actions vis-à-vis the internal

24   investigation.

25         The next question is whether, under Rule 502(a),

1   the disclosed and undisclosed communications in materials

2   "ought, in fairness, be considered together."  Certainly, the

3   early June 2016 emails from Defendant Schwartz marked as

4   Defense Exhibit 16 to 18 and included on the Government

5   exhibit list, by themselves, could suggest that Defendant

6   Schwartz, and perhaps to a lesser extent Defendant Coburn,

7   did not support the internal investigation and sought to end

8   it.  And the Government's exhibit list suggests that the

9   prosecution might seek to introduce them at trial.  Presented

10  in isolation and without further context, those

11  communications might indeed constitute strong evidence that

12  Schwartz and Coburn wanted the investigation shut down

13  prematurely to protect their own interests.  Further,

14  Schwartz's emails on June 9, 2016, could be interpreted as a

15  preemptive effort to discredit the eventual findings of the

16  investigation.  In isolation the trier of fact would not

17  otherwise be aware of efforts that the Defendants might have

18  undertaken to advance the investigation such as those

19  reflected in the July 2016 emails marked as Defense

20  Exhibits 19-22.  Those communications could reasonably be

21  construed as Schwartz cooperating with the investigation even

22  though, only a month before, he questioned its direction and

23  pressed for its closure by the end of June.  The Defendants

24  would thus be at a distinct, and distinctly unfair,

25  disadvantage, as the jury would have access to only those

1  communications suggesting that the Defendants sought to stymy

2  the internal investigation.  Accordingly, communications and

3  materials showing Schwartz and Coburn supporting the internal

4  investigation ought, in fairness, be considered with those

5  show them seeking to interfere with or shut down the

6  investigation.  The former category might constitute

7  important evidence for the Defense to introduce at trial in

8  responding to the emails such as Defense Exhibits 16 through

9  18, and for the jury to consider in forming a complete and

10  accurate assessment of the Defendants' words and actions

11  regarding the internal investigation.

12       This conclusion is entirely consistent with Judge

13  McNulty's prior rulings.  At the risk of redundancy, it is

14  important to recall that Judge McNulty, in considering the

15  scope of Cognizant's "significant" waiver, held that

16  "Cognizant's voluntary turnover of materials or revelation of

17  the fruits of its investigation to the DOJ also entailed a

18  waiver of the privilege as to communications that 'concern

19  the same subject matter' and 'ought in fairness be considered

20  together' with the actual disclosures to DOJ."  January 24,

21  2022, Opinion, at 13-14.

22       This conclusion is also consistent with Third

23  Circuit law on the scope of waiver.  In In re Teleglobe

24  Communications Corp., the Third Circuit noted that the

25  touchstone for partial waiver -- i.e., "whether the waiver

1  also ends the privilege as to any related but not disclosed

2  communications" -- "is fairness."  493 F.3d 345, at 361 (3d

3  Cir. 2007).  Because Cognizant and Defendants are not

4  directly adverse in the criminal case, it is not entirely

5  accurate to say that Cognizant's partial disclosures seek to

6  take advantage of the Defendants.

7          However, Cognizant's production of materials such

8  as emails suggesting that Defendants attempted to interfere

9  with the internal investigation, while withholding materials

10 showing Defendants' efforts to support or further the

11 internal investigation, provide a significant unfair

12 advantage to the Government by depriving the Defense of any

13 opportunity to paint a more complete picture of the

14 Defendants' actions with respect to the internal

15 investigation, and would also deprive the finder of fact of

16 important evidence to form a complete understanding of the

17 Defendants' words and actions vis-à-vis the internal

18 investigation.  See also Westinghouse Electric Corp., 951

19 F.2d at 1427 n.14.

20         The final issue in this third category is the scope

21 of what Cognizant must actually produce.  The parties offer

22 scant guidance on this issue.  As Cognizant fairly observes,

23 Defendants offer little by way of specificity as to what they

24 seek.  Defendants merely state that they seek "documents and

25 communications showing Defendants assisting in and

1  encouraging cooperation with the investigation."  See, e.g.,

2  Defense Moving Brief at 40.  For its part, Cognizant objects

3  to any production.

4         The Court therefore respectfully recommends that

5  the District Court order Cognizant to produce documents and

6  communications wherein Defendants support the internal

7  investigation.  The Undersigned also recommends that the

8  District Court require the parties to meet and confer on the

9  appropriate parameters for the production.  Counsel for

10 Cognizant and Defendants are well familiar with the scope of

11 the internal investigation and the Defendants' roles and

12 actions within it.  They should have a strong appreciation

13 for what documents and communications actually or likely

14 exist and the relative pertinence of those documents and

15 communications to the Defendants' actions and statements

16 during the internal investigation.

17        To assist the parties in their meet-and-confer, the

18 Undersigned offers the following guidance.  First, the

19 Defendants' involvement in the investigation is necessarily

20 finite.  The investigation incepted in early 2016, and

21 Defendants' involvement with it ceased on or around

22 August 20, 2016.  That relatively narrow period of time

23 should form the date range for the documents to be searched

24 for and produced.

25        Second, there is little utility in requiring

1  Cognizant to produce even the most ministerial emails or

2  communications.  If, for example, Defendant Schwartz or

3  Defendant Coburn merely forwarded an email concerning the

4  investigation to someone else, without meaningful comment,

5  involvement, or follow-up activity reflected in that email,

6  the Court would not expect Cognizant to provide that

7  forwarding email.  Such an email has little probative value,

8  and, therefore, would not satisfy the "ought in all fairness

9  be considered" prong of Rule 502(a).  See also In re

10 Teleglobe Communications Corp., 493 F.3d at 361 ("extending

11 the waiver, however, is not a punitive measure, so courts do

12 not imply a broader waiver than necessary to ensure that all

13 parties are treated fairly.").

14         On the other hand, emails or other documents or

15 communications in which Defendant Schwartz or Defendant

16 Coburn took material measures to actively support or

17 coordinate the activities of the internal investigation, or

18 directed other officers or employees to do so, should be

19 produced.  Therefore, to the extent Cognizant possesses

20 directives from Schwartz or Coburn, directing employees to

21 cooperate with the investigators, or coordinating the

22 gathering of information required by the investigators, or

23 updating the Audit Committee or other pertinent Cognizant

24 officers of status of the investigation, Cognizant should be

25 required to produce that information to the Defendants.

1          That constitutes the Report and Recommendation of

2   the Court.  A written recommendation will issue.

3                 (Conclusion of proceedings)

1                          Certification

2        I, SARA L. KERN, Transcriptionist, do hereby certify

3   that the 83 pages contained herein constitute a full, true,

4   and accurate transcript from the official electronic

5   recording of the proceedings had in the above-entitled

6   matter; that research was performed on the spelling of proper

7   names and utilizing the information provided, but that in

8   many cases the spellings were educated guesses; that the

9   transcript was prepared by me or under my direction and was

10  done to the best of my skill and ability.

11       I further certify that I am in no way related to any of

12  the parties hereto nor am I in any way interested in the

13  outcome hereof.

14

15

16

17

18  S/ *Sara L. Kern*                    18th of August, 2023

19  _____     _____
    Signature of Approved Transcriber            Date

20

21
    Sara L. Kern, CET**D-338
22  King Transcription Services
    3 South Corporate Drive, Suite 203
23  Riverdale, NJ  07457
    (973) 237-6080

24

25