PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
DIRECT DIAL: +1 212 373 3766
EMAIL: JLERER@PAULWEISS.COM

BRUSSELS
HONG KONG
LONDON
LOS ANGELES
SAN FRANCISCO

TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

February 24, 2025

**VIA ECF**

The Honorable Michael E. Farbiarz
U.S. District Judge, District of New Jersey

*United States* v. *Coburn & Schwartz,* 19-cr-120 (MEF)

Dear Judge Farbiarz:

In accordance with the Court's Order, ECF No. 836, Mr. Schwartz, joined by Mr. Coburn, respectfully submits this letter in support of his renewed motion for due process relief.[1]

The essence of this motion is that the parties have had unequal access to key evidence and witnesses in India. That unequal access, driven at least in part by the government's unequal efforts in gathering evidence, has had demonstrable effects that call into question the fairness of this prosecution and the trial scheduled to begin next week. This renewed motion seeks to address that inequality, which threatens to deprive defendants of their constitutional rights and to undermine public confidence in the integrity of this prosecution and the accuracy of the adjudication at trial.

**I.    THE PARTIES HAVE HAD UNEQUAL ACCESS TO EVIDENCE ABROAD**

For over five years, defendants have sought to obtain particular exculpatory evidence and access to specific exculpatory witnesses in India. Those efforts have been unsuccessful and, until recently, were not only unaided by the government—which has at its disposal numerous tools to secure foreign evidence that criminal defendants do not—but actively stymied by it.[2] In December 2020, the defense asked the government to help obtain subpoenaed records from L&T, either through a direct request to L&T or an MLAT. ECF No. 500-45. The government told the Court that, while it was "not going to get in the way," it would "certainly not . . . pursue an MLAT to India or take other steps to assist the defense." ECF No. 137 (Tr. 41:13–24). After the Court ruled that it lacked personal jurisdiction over L&T to enforce the subpoena, ECF Nos. 264 at 2, 268 at 3, the defendants moved for issuance of letters rogatory to obtain evidence from L&T and conduct Rule 15 depositions of seven material and otherwise unavailable exculpatory witnesses in India. ECF Nos. 168, 396. The government told the Court that letters rogatory are "the only available procedure for criminal defendants to request a deposition in India" and that requesting depositions via the U.S.-India MLAT "would exceed the scope of the Treaty." ECF No. 405 at 3. As the

---

[1] Given the Court's familiarity with the facts and legal issues, defendants incorporate by reference the background and legal arguments in their initial brief, ECF No. 746-1, as supplemented below.

[2] During the course of its investigation, the government interviewed witnesses from India who were made available by Cognizant and L&T, and who were interviewed outside of India in alternative locations like Kuala Lumpur, Rome, and Singapore. The government has made no secret of its access to these witnesses even when it was outside the scope of formal process with the government of India. *See* ECF No. 399 at 8, 10, 10 n.4. The defense does not have this access.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Michael E. Farbiarz                                                                                                       2

defense noted then, "the government's position that it could not use its discretion to request the depositions under the MLAT is incorrect." ECF No. 407 at 3–4.

     The Court issued letters rogatory on December 2, 2022 and the defendants used their best efforts to move the process forward. On January 10, 2023 the Court directed the government to use its "good offices" to update the Court and defendants on the progress of the letters rogatory, ECF No. 438 (Tr. at 21:15–17). But it was not until over two months later, on March 28, 2023 (almost four months after they had been issued by the Court) that the State Department transmitted the letters rogatory to Indian authorities, where they remained, unacted on, for nine months. ECF No. 499-27. On December 15, 2023, the government reported that the Indian government had declined to execute the letters rogatory and had instead requested (as defendants had been advocating for years) that the government send the request via MLAT. ECF No. 599. The government continued to resist, taking the position that "letters rogatory are the only available procedure for criminal defendants to request depositions" and that "the Government cannot make the request using the U.S.-India MLAT." *Id.* The Court directed the government to continue its internal discussions regarding the basis for its position and provide an update. ECF No. 661 (Tr. at 117:8–17). On January 2, 2024, the government reported that it could and would, in fact, pursue an MLAT request on defendants' behalf, ECF No. 602, and on January 11, 2024 transmitted it to India, seeking the deposition testimony defendants had sought through letters rogatory, ECF No. 609. By this time, however, it was too late.

     While awaiting execution of the MLAT, in July 2024, the government requested that the September 2024 trial date be adjourned to "increase the chance that the depositions occur." ECF No. 756 at 2. The Court adjourned the trial and made clear its expectation that the government "will during the coming weeks act with added intensity, using all means reasonably available to it, to ensure that the MLAT is complied with and the relevant depositions are taken, in plenty of time before trial." ECF No. 769 at 7. Unfortunately, that is not how things played out. █████

█████ As a result, by November 2024, the government believed that "it is unlikely that the MLAT will be executed and the depositions will be conducted sufficiently in advance of the March 3, 2025 trial." █████

     In stark contrast to its belated and ultimately ineffective efforts to pursue exculpatory evidence crucial to the defense, █████ numerous *ex parte*, sealed submissions to the

---

3 █████

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Michael E. Farbiarz                                                                                                              3

Court between October 2024 and February 2025—all of which defendants have requested be disclosed immediately in light of the impending trial of this matter. ECF No. 850.[4]

In sum, had the government acted promptly, diligently, or with equal energy, when the defense first requested help in securing exculpatory evidence and testimony from India, it could have prevented (or at least ameliorated) the due process violations in this case. It did not.

## II.  SIGNIFICANT DUE PROCESS RELIEF IS REQUIRED

This glaring disparity in access to evidence and witnesses abroad threatens to deprive defendants of exculpatory evidence and their due process rights to a fair trial and a complete defense, undermining the integrity of the trial. The question is what remedy ought to be imposed.

Although no doubt a severe remedy, dismissal is justified on the facts of this case, which features an extreme example of the structural imbalance inherent in FCPA cases often premised, as here, nearly entirely on evidence and witnesses abroad. *See, e.g.*, Michael E. Farbiarz, *Accuracy and Adjudication: The Promise of Extraterritorial Due Process*, 116 Colum. L. Rev. 625, 679 (2016) (potential due process remedies include "dismissal of the case itself"); *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) ("A district court may exercise its supervisory power 'to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury . . . .'") (citation omitted); *United States v. Wang*, 1999 WL 138930, at *55 (S.D.N.Y. Mar. 15, 1999) (dismissing indictment because "[a]llowing a trial to proceed in [witness's] absence would violate due process and the Sixth Amendment"). Indeed, the imbalance and fundamental unfairness that has resulted in this case could not be starker—particularly as the government has wielded its powerful foreign evidence gathering abilities for its own benefit, but refused to use them to acquire exculpatory evidence for the defense until it was too late.

Although this case should be dismissed, suppression is also an established remedy for a constitutional violation unfairly benefiting the government. *E.g.*, *United States v. Cloud*, 102 F.4th 968, 981 (9th Cir. 2024). So, the Court could, for example, suppress all evidence obtained from India, where the government long refused to exercise its MLAT powers, or the testimony of Ramamoorthy, whose appearance the government previously secured by vigorous, direct action in India ████████████████████████, but whose story will be far more difficult to challenge in the absence of evidence, including his statements to Indian authorities, that defendants cannot obtain. Alternatively, the Court could prevent Ramamoorthy from testifying as to statements allegedly made by the three individuals in the government's unfulfilled MLAT request whom the government has identified as co-conspirators, but whom the defense is unable to interview due to the government's delay in agreeing to submit the MLAT: Ramesh Vadivelu, S.N. Subrahmanyan,

---

[4] Defendants continue to have scant insight into what Ramamoorthy has said to Indian authorities and no ability to obtain those statements without the government's help. In November 2024, the defense reiterated its "concern that Mr. Ramamoorthy might be telling the Indian authorities a different story from the one he has told the" government and renewed its request for his statements. The potential relevance of this material is clear. The ED recently informed the government that it "did not believe that Mr. Ramamoorthy was being entirely forthright . . . regarding [his] knowledge of the movement of money relating to the bribery conduct at issue." ECF No. 796-6 at 2.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Michael E. Farbiarz     4

and Venkatesan Natarajan. *See, e.g., United States v. Ray*, 578 F.3d 184, 202 (2d Cir. 2009) ("The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought. After a due process violation has occurred, courts endeavor to fashion relief that counteracts the prejudice caused by the violation.") (citations omitted).

    The Court has also previewed another potential remedy and natural alternative method to level the playing field: the admission of exculpatory statements made under reliable circumstances in India. *See* ECF No. 740 (Tr. at 54:17–24, 55:9–11); ECF No. 661 (Tr. at 113:24–114:1). The government's recent agreement to stipulate to admit redacted versions of the FBI-302s for the three L&T MLAT deponents whom the government already interviewed does not cure the due process violations here. As the Court has recognized, admission of those FBI-302s is a decidedly imperfect, and incomplete, remedy. *See* ECF No. 789 (Tr. at 44:22–45:1) ("The first best solution here remains what it's always been, which is witnesses come in either here or through deposition and they are cross-examined. . . . That's better for the truth-seeking process for sure."). The FBI-302 reports "do not measure up to witness testimony," are "both less vivid and less persuasive," and, "[o]n many of the key points, the reports are not especially detailed." ECF No. 769 at 4.

    As with those FBI-302s, the anticipated testimony of a Debevoise attorney regarding the U.S.-based firm's investigation on behalf of L&T is likewise insufficient to remedy the due process violations here. Though "also part of the mix," it will not "quite cut to the core issue," *id.* at 5, not only because the L&T witnesses will not themselves be testifying, but also because the testimony will be limited to information contained in L&T's disclosures to the government. Those disclosures did not include, for example, the identification of other L&T witnesses whom Debevoise interviewed. To begin to remedy the due process violations discussed above, the Court should thus also admit L&T's three written, exculpatory statements to the National Stock Exchange of India—which are the subject of Schwartz's pending Motion *in Limine* No. 3 and satisfy the residual hearsay exception. *See* ECF Nos. 499-1 at 75–76, 500-1 at 40–58.

    To help mitigate these significant (and highly prejudicial) shortfalls, alongside the admission of the evidence described above, the Court should also craft an appropriate jury instruction that makes clear that the government had the exclusive authority to seek to compel the missing L&T witnesses' testimony; that the witnesses' testimony would have been favorable to the defense and inconsistent with the government's theory of prosecution; and that the jury may draw an adverse inference from the government's unequal efforts to procure evidence from abroad. We reiterate our prior requests for discovery of Ramamoorthy's statements to Indian law enforcement and the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    In sum, the Court should grant defendants' motion and dismiss the Indictment or order discovery and fashion a remedy to redress the deprivation of defendants' due process rights.

                                                          Respectfully submitted,

                                                           /s/ *Justin D. Lerer*
                                                           Justin D. Lerer

cc:     All Counsel of Record (via ECF)